**STATE of Missouri, Respondent,**

v.

**Ricky J. HIBLER, Appellant.**

**No. WD 57280.**

Missouri Court of Appeals,
Western District.

June 27, 2000.

Richard E. McFadin, Gallatin, for appellant.

Douglas S. Roberts, Pros. Atty., Chillicothe, for respondent.

1. All statutory references are to RSMo 1994,

Before: BRECKENRIDGE, C.J., and SMART and EDWIN H. SMITH, JJ.

EDWIN H. SMITH, Judge.

Ricky J. Hibler appeals the judgment of his jury conviction in the Circuit Court of DeKalb County, Missouri, of driving while intoxicated (DWI), in violation of § 577.010.[1] As a result of his conviction, he was sentenced to six months in the county jail and a fine of $500.

The appellant raises three points on appeal. In Point I, he claims that the trial court erred in allowing the endorsement of additional witnesses by the State on the day of trial and for not granting him a continuance after allowing the endorsement because in doing so, his trial counsel was denied an opportunity to adequately prepare for trial. In Point II, he claims that the trial court erred: (a) in denying his motion for a mistrial and sending the jury back for further deliberations after it had returned a verdict of guilty, which was rejected by the trial court as being inconsistent with the instructions of the court; and (b) in giving a non-MAI-CR explanatory instruction to address the inconsistency in the jury's verdict and to guide it in its further deliberations. In Point III, he claims that the trial court plainly erred in allowing, over his objection, the State to argue, during its closing argument, an adverse inference from the appellant's failure to call his father as a witness because it deprived him of his constitutional right to trial before a fair and impartial jury.

We affirm.

### Facts

On October 4, 1998, at approximately one o'clock in the morning, Officer Russell Morris of the Chillicothe Police Department observed a black Jeep Cherokee proceeding through an intersection at a high rate of speed and gave chase. The vehicle was traveling northbound on Samuel

unless otherwise indicated.

Street when Officer Morris observed it cross over the center line and into the oncoming lane of traffic. He continued his pursuit as the vehicle turned off of Samuel onto Hickory Street. At some point, he observed the Jeep slow down, but run a stop sign. While in pursuit, he radioed for a license and registration check. Officer Morris then observed the Jeep, after entering an intersection and attempting to turn, veer off the right-hand side of the road; run up on the curb, narrowly missing a utility pole; and make a sharp recovery back to the left, crossing the center line. It was at this time that he activated the lights on his patrol car and proceeded to stop the Jeep.

He identified the driver as the appellant, and after requesting him to roll down the window, he noticed a moderate to strong odor of intoxicants. He then requested him to exit the vehicle and observed him to be unsteady on his feet, swaying and using the car door for balance. At that time, Officer Shannin Crawford of the Chillicothe Police Department arrived for backup. Upon questioning, the appellant admitted that he had been drinking beer and was intoxicated.

Based on his observations and the admissions of the appellant, Officer Morris believed the appellant to be intoxicated and requested him to perform several field sobriety tests, including the horizontal gaze nystagmus, which he failed, according to Officer Morris. The appellant was arrested for DWI and transported to the Chillicothe Police Department where he was asked to take a breathalyzer test. He attempted to perform the test approximately three times, but on each occasion did not completely seal his lips around the mouthpiece of the breathanalyzer as required to provide a sufficient breath sample for testing. Consequently, he was written up for a refusal. After being cited for DWI, the appellant wadded the ticket up and threw it on the floor and became insulting and belligerent towards the officers, including making obscene gestures.

Officers Crawford and David Todd, also of the Chillicothe Police Department, were present at the time.

On April 13, 1999, the appellant's case was tried to a jury in the associate division of the Circuit Court of DeKalb County, Missouri, the Honorable Warren L. McElwain presiding. On the day of trial, the State moved to endorse two additional witnesses, Officers Crawford and Todd, to which the defense objected. The objection was overruled. Counsel then requested a continuance, which was also overruled.

At trial, Officer Crawford testified that he heard the appellant admit to Officer Morris that he had been drinking. He also testified, that based on his observations, he believed that the appellant was intoxicated. As to the behavior of the appellant at the police station, he testified that he observed him refuse to sign the ticket, as requested; grab the ticket out of the officer's hand; and then make an obscene gesture. Officer Todd testified that the appellant, while at the police station, was belligerent and made derogatory remarks about the officers and the police department.

During its closing argument, the prosecuting attorney commented,

> We talked about five witnesses in this case. There is actually six. Remember. The Defendant's father picked him up. The Defendant's father saw him at the police station. Now, if those police officers were lying about the way he acted at the police station, don't you think his father would be in here telling you he lied? The fact that his father wasn't called as a witness, I think you can draw the conclusion that his father, if called, would have had to say, "My boy acted poorly at the police station."

The appellant's counsel objected to the prosecutor's comments as being "improper argument" because "[h]e's talking about what his father would testify to" and "[h]is father was not called as a witness." The

trial court overruled the objection. The prosecutor continued,

> That sixth witness, maybe the most important witness in the whole case, certainly the most interesting witness. If his daddy was to ... if his daddy thought he wasn't behaving properly, that the officers were behaving poorly, that his boy wasn't drunk don't you think he would have been called, his daddy wasn't called. He didn't put his daddy on the stand and I think you can draw the conclusion from that if his father had taken the stand and raised his right hand to tell the truth, he would have had to told ... tell you that his son was belligerent, aggressive, profane with the officers and I think his daddy would have to tell he told those officers what they ... that he made that gesture to those officers. I think you'd have to tell ... you can draw the conclusion that he would have to tell you that his son was drunk on that night when he came to pick him up at the police station.

After submission and deliberation, the jury returned a verdict finding the appellant guilty as charged and assessed punishment of "imprisonment in the county jail for a term not to exceed six months, and a fine, the amount to be determined by the Court." The trial court refused to accept the verdict because it was not in proper form. The court informed the jury that the verdict was unacceptable and that it would be required to deliberate further. The court then advised counsel, outside the hearing of the jury, that it was going to give Instruction No. 10, which read: "In the event you desire a jail sentence to be imposed, the law requires the jury assess a specific amount of time in jail. The assessed amount of time cannot exceed six months." When asked, the State indicated that it had no objection to what the trial court proposed. However, the defense, although not objecting to the instruction to

be given, did object to the jury being sent back for further deliberations, requesting that a mistrial be granted, which was denied.

After the jury deliberated further, it returned a guilty verdict in proper form, assessing punishment at six months in jail and a fine to be determined by the court, which was accepted by the trial court. On May 5, 1999, the appellant filed a motion for judgment of acquittal or, in the alternative, for a new trial. The court denied the motion on May 15, 1999. The appellant was then sentenced to six months in the DeKalb County jail and a $500 fine.

This appeal follows.

## I.

In Point I, the appellant claims that the trial court erred in allowing the endorsement of additional witnesses by the State on the day of trial and for not granting him a continuance after allowing the endorsement because in doing so, his trial counsel was denied an opportunity to adequately prepare for trial. We disagree.

■■■ "Under Rule 23.01(f), the court has discretion to permit the late endorsement of any material witness. Absent an abuse of discretion or prejudice to the appellant, the conviction should not be overturned because a witness was endorsed on the day of trial." *State v. Stamps*, 865 S.W.2d 393, 397 (Mo.App. 1993) (citation omitted).

■■■ Rule 23.01(f) [2] provides:

The names and addresses of all material witnesses for the prosecution except rebuttal witnesses and witnesses who will appear upon the trial for the production or identification of public records shall be listed. Additional witnesses may be listed at any time after notice to the defendant upon order of the court.

---

**2.** All rule references are to the Missouri Rules of Criminal Procedure (1999), unless otherwise indicated.

In considering whether a trial court abused its discretion in permitting the late endorsement of additional witnesses pursuant to this rule, the appellate court is to consider the following factors:

> (1) whether the defendant waived the objection; (2) whether the State intended to surprise the defendant or acted deceptively or in bad faith intending to disadvantage the defendant; (3) whether the defendant was, in fact, surprised and suffered disadvantage; and (4) whether the type of testimony given might have been readily contemplated by the defendant.

*State v. Thomas,* 965 S.W.2d 396, 399 (Mo. App.1998) (citations omitted). "The main consideration is whether the late disclosure of witnesses resulted in fundamental unfairness or prejudice to substantial rights of the defendant." *Id.* (citation omitted).

■ The record reflects that the appellant did object to the endorsement of the witnesses by the State on the day of trial. However, he at no time asserts in his brief, and the record does not reflect, that the State, by its late endorsement of witnesses, intended to surprise the defense, or acted deceptively or in bad faith intending to disadvantage it. As to whether the appellant was, in fact, surprised and disadvantaged by the late endorsement of witnesses and whether the testimony given by these witnesses might have been readily contemplated by him, the appellant's trial counsel admits that, pursuant to pretrial discovery, the defense was provided by the State with a copy of all the police reports made incident to his arrest, including those of Officers Todd and Crawford. He also admits to reading the reports. As such, as a practical matter, counsel should have reasonably anticipated that they might be called as witnesses and should have planned accordingly, including taking their depositions if he felt that they might testify to matters, which would necessitate further investigation in order to present an adequate defense on the appellant's behalf.

The officers' reports are not included in the record filed on appeal, making it impossible for us to determine what defense counsel knew and did not know about matters on which the two officers would possibly testify at trial.[3] However, he makes no assertion in his brief that the officers testified to matters not contained in their reports. In addition, the record does not reflect any instances in which counsel voiced any concerns that the officers were testifying contrary to their reports or to matters not contained therein. From this it can be reasonably inferred that the officers did not testify at trial to any matters at trial not covered by the reports such that the appellant's trial counsel would have been surprised as to their testimony. The bottom line is that, based on the reports provided to him prior to trial, the appellant's counsel was aware that the officers in question were potentially witnesses at trial, subject to late endorsement by the State, and of what they had observed; and if he believed that their testimony might be critical to his client's case, he should have deposed them when he had the opportunity to do so. Thus, we cannot say that the late endorsement of witnesses by the State resulted in fundamental unfairness or prejudice to substantial rights of the appellant such that the trial court clearly abused its discretion in allowing the same.

■ In this point, the appellant also claims that, after the trial court allowed the late endorsement of witnesses, fundamental fairness dictated that it sustain his motion for continuance to allow him an opportunity to fully investigate what their testimony would be, including deposing them. We disagree.

---

3. It is the appellant's responsibility to prepare a complete record on appeal. *State v. Dunn,*

817 S.W.2d 241, 244 (Mo. *banc* 1991).

The decision to grant or deny a continuance is a matter of trial court discretion. *Thomas*, 965 S.W.2d at 400. To demonstrate prejudice on appeal, a very strong showing is required to prove that the trial court abused its discretion by denying the motion to grant the continuance requested. *State v. Crahan*, 747 S.W.2d 721, 722 (Mo.App.1988) (*citing State v. Cuckovich*, 485 S.W.2d 16, 21–22 (Mo. *banc* 1972)). The party requesting the continuance has the burden of showing that prejudice resulted from such denial. *Id.* (*citing State v. Nave*, 694 S.W.2d 729, 735 (Mo. *banc* 1985)).

Here, the appellant does not specify how further time to investigate would have aided him at trial with respect to the actual testimony given by the officers in question. As such, his claim must fail in that he did not demonstrate on appeal the prejudice he claims. *Id.* Moreover, for the same reasons discussed, *supra*, as to why the trial court did not err in allowing the late endorsement of witnesses, on the face of the record we cannot discern any prejudice from the trial court's denial of the appellant's motion for continuance. As such, we find that the trial court did not abuse its discretion in denying the appellant's motion for continuance.

Point denied.

## II.

In Point II, the appellant claims that the trial court erred: (a) in denying his motion for a mistrial and sending the jury back for further deliberations after it had returned a verdict of guilty, which was rejected by the court as being inconsistent with the instructions given; and (b) in giving a non-MAI-CR explanatory instruction to address the inconsistency in the jury's verdict and to guide it in its further deliberations. We will address each subpoint separately.

### A. Motion for Mistrial

"The standard of review for a trial court's refusal to grant a mistrial is abuse of discretion." *State v. Albanese*, 9 S.W.3d 39, 51 (Mo.App.1999) (citations omitted). The decision whether to declare a mistrial " 'rests largely within the discretion of the trial court because the trial court has observed the incident that precipitated the request for a mistrial and is in a better position than is the appellate court to determine what prejudicial effect, if any, the incident had on the jury.' " *Id.* (*quoting State v. Webber*, 982 S.W.2d 317, 322 (Mo.App.1998)). " ' "Judicial discretion is abused when a trial court's ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration. . . ." ' " *Id.* (*quoting State v. Jackson*, 969 S.W.2d 773, 775 (Mo. App.1998) (citation omitted)). Granting a mistrial is a " 'drastic remedy to be used only in the most extraordinary circumstances when there is a grievous error which cannot otherwise be remedied.' " *State v. Jones*, 7 S.W.3d 413, 419 (Mo.App. 1999) (*quoting State v. Sanders*, 903 S.W.2d 234, 238 (Mo.App.1995)).

Pursuant to the trial court's instructions, specifically the State's verdict director, if the jury found the appellant guilty, as charged, it had several options as to the punishment it could recommend, one of which was to assess and declare a jail sentence, "not to exceed six months." There is no dispute on appeal that this instruction mandated the jury, if it found the appellant guilty and was recommending a jail sentence, to specify the exact term thereof, rather than a range. This it did not do. Rather, contrary to the verdict director given, the jury, in Verdict A, found the appellant guilty and recommended, *inter alia*, a jail sentence, "not to exceed six months." Upon receipt of this verdict, the trial court advised the jury:

> We're going to—The Court cannot accept this verdict. There seems to be some misunderstanding. So what we're going to have to do at this point is, we're

going to have to send you back into the jury room. And the lawyers and I will get together and will send you a message in just a few minutes, as soon as we get that done.

So, Mr. Bailiff, would you take the jury back in the jury room, please.

The court then advised the attorneys that he intended to give the following non-MAI-CR explanatory instruction to guide the jury in its further deliberations: "In the event you desire a jail sentence be—to be imposed, the law requires the jury assess a specific amount of time in jail. The assessed amount of time cannot exceed six months." The court also advised the attorneys that it was "going to bring the jury back in and give—read them that Instruction No. 10 and then also [was] going to submit Verdict A–2 and Verdict B finding him not guilty." Having so advised, the court then asked the parties if they had any objection to its doing that. The State replied, "No, Your Honor." However, the defense, when asked, stated:

Yes, Your Honor. I would like to make a record. I think that the jury has spoken that they've come—when they came back with the verdict that said not to exceed six months, placing the burden upon the Court to make a determination. They really didn't make a determination as to how much time Mr. Hibler was to receive. And I think under those circumstances that there is error. I don't think that you can send them back with instructions and redo what they already have done.

They have brought back a verdict, correct or incorrect. If the verdict is incorrect, I think, under the circumstances, I would respectfully request a mistrial. There is no way, I think, it can be corrected, and I ask the Court to declare a mistrial and get another date when this matter can be tried.

These quoted portions of the transcript clearly indicate that the appellant's motion for a mistrial was directed at the trial court's decision to return the jury for fur-

ther deliberations. It was counsel's argument that if the trial court believed that the jury's verdict was "incorrect," based on the instructions given, it was required, "under the circumstances," to declare a mistrial and thus, it was error to return the jury for further deliberations. The issue then for us to decide in this subpoint is whether the trial court, having determined that the jury's verdict was inconsistent with the instructions given, erred in returning the jury for further deliberations and not declaring a mistrial.

 It is well settled in the law that the trial court has a duty to examine the verdict or verdicts returned by the jury for defects, ambiguities, and inconsistencies. *State v. Zimmerman*, 941 S.W.2d 821, 824–25 (Mo.App.1997). It is also well settled that if an inconsistency is found in the verdict, as in this case, the trial court is required to reject it and return the jury for further deliberations to make every attempt to resolve the inconsistency. *State v. Peters*, 855 S.W.2d 345, 348–49 (Mo. *banc* 1993). Guided by these principles of law, the trial court here obviously did not err in overruling the appellant's motion for a mistrial and returning the jury for further deliberations.

## B. Giving of Non–MAI–CR Explanatory Instruction

In this point, the appellant also claims that the trial court erred in giving to the jury Instruction No. 10, as set out, *supra*, to assist it in its further deliberations to resolve the inconsistency in the verdict rejected by the trial court. Specifically, it claims that the court's explanatory instruction was in error because it was not in "accordance with Missouri Approved Instructions," and it unduly highlighted the maximum amount of jail time the jury could assess and declare if it found the appellant guilty such that it was improperly influenced into assessing and declaring the maximum jail sentence permitted under the law and the instructions. We disagree.

With respect to our standard of review in this subpoint, we would note that the appellant never objected at trial to the giving of Instruction No. 10. As stated, *supra*, his only objection was to the jury being returned for further deliberations. As such, his claim in this subpoint is not preserved for review. *State v. Roe*, 6 S.W.3d 411, 415 (Mo.App.1999). His only review then would be for plain error under Rule 30.20.

Rule 30.20 provides, in pertinent part, that "[w]hether briefed or not, plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." "'The plain error rule should be used sparingly and does not justify a review of every [alleged] trial error that has not been properly preserved for appellate review.'" *State v. McMillin*, 783 S.W.2d 82, 98 (Mo. *banc* 1990) (*quoting State v. Valentine*, 646 S.W.2d 729, 731 (Mo.1983)); *see also State v. Silvey*, 894 S.W.2d 662, 670 (Mo. *banc* 1995).

Giving the language in the rule its plain and ordinary meaning, we interpret it as providing for a two-step process in determining plain error review. Under the rule, the first step involves an examination to determine whether the claim for review "facially establishes substantial grounds for believing that 'manifest injustice or miscarriage of justice has resulted,'" or in other words, whether on the face of the claim, "plain error" has, in fact, occurred. *State v. Brown*, 902 S.W.2d 278, 284 (Mo. *banc* 1995). In the absence of such a determination, a court should "decline to exercise its discretion" to review a claim of error under Rule 30.20. *Id.* The rule makes it clear that not all prejudicial error — that is, reversible error — can be deemed plain error. Plain errors are those which are "evident, obvious and clear." *State v. Bailey*, 839 S.W.2d 657, 661 (Mo.App.1992). If plain error is found on the face of the claim, then the rule authorizes, as a matter of court discretion,

a second step to determine whether the claimed error resulted in manifest injustice or a miscarriage of justice.

Instructional error seldom rises to the level of plain error. *Roe*, 6 S.W.3d at 415; *State v. Cates*, 3 S.W.3d 369, 372 (Mo.App.1999). "To show that the trial court 'plainly erred' in submitting a jury instruction, a defendant 'must go beyond a demonstration of mere prejudice.'" *Cates*, 3 S.W.3d at 372 (*quoting State v. Davidson*, 941 S.W.2d 732, 736 (Mo.App.1997)). "'"In the context of instructional error, plain error results when the trial court has so misdirected or failed to instruct the jury that it is apparent to the appellate court that the instructional error affected the jury's verdict,"'" *Roe*, 6 S.W.3d at 415 (*quoting State v. Doolittle*, 896 S.W.2d 27, 29 (Mo. *banc* 1995) (citation omitted)), and "'cause[d] manifest injustice or miscarriage of justice.'" *State v. Schnelle*, 7 S.W.3d 447, 451 (Mo.App.1999) (*quoting State v. Cline*, 808 S.W.2d 822, 824 (Mo. *banc* 1991)). The defendant bears the burden of showing that plain error has occurred which resulted in manifest injustice or a miscarriage of justice. *State v. Isa*, 850 S.W.2d 876, 884 (Mo. *banc* 1993).

Rule 28.02(c) provides: "Whenever there is an MAI–CR instruction or verdict form applicable under the law and Notes on Use, the MAI–CR instruction or verdict form shall be given or used to the exclusion of any other instruction or verdict form." Furthermore, Rule 28.02(f) provides: "The giving or failure to give an instruction or verdict form in violation of this Rule 28.02 or any applicable Notes on Use shall constitute error, the error's prejudicial effect to be judicially determined." As such,

> "[e]rror standing alone ... is not sufficient to overturn the jury's determination of guilt. There must be a showing of prejudice to the appellant as a result of the error before there are grounds to upset the verdict." *State v. Gilmore*,

797 S.W.2d 802, 805 (Mo.App.1990). "Prejudice, as that term is used in connection with erroneous jury instructions, is defined as the potential for misleading or confusing the jury." *State v. Green,* 812 S.W.2d 779, 787 (Mo.App.1991). *State v. Stoer,* 862 S.W.2d 348, 351 (Mo. App.1993).

In civil cases, where the trial court has rejected a verdict as being inconsistent, it is required, in returning the jury for further deliberations, to give MAI 2.06 [1983 New], which provides:

> The court cannot accept your verdict[s] as written. [Verdict and Verdict are inconsistent.] You should examine your verdict[s] in light of all of the instructions. [A] [N]ew verdict form[s] are [is] attached for your use, if needed. Do not destroy any of the verdict forms.

### Notes on Use (1989 Revision)

**1.** Insert sentence describing the problem in the verdict or verdicts proposed, for example, "Your findings in Verdict are inconsistent." or "Verdict is not complete." or "The meaning of Verdict is not clear."

This instruction may be given only if the jury attempts to return an inconsistent, incomplete, ambiguous or otherwise erroneous verdict. The court should identify each of the new verdict forms submitted with this instruction with an appropriate designation such as "Second Set."

(Footnote omitted.) For reasons not clear to us, the criminal instructions do not have a counterpart. The criminal instructions do include MAI–CR 3d 312.06,[4] entitled "INCONSISTENT VERDICTS," which is almost verbatim with MAI 2.06. However, for reasons again not clear to us, pursuant to MAI–CR 3d 312.06, Notes on Use 1 and 2, the instruction is limited to only cases where the defendant is charged with either armed criminal action or felony murder and the underlying felony. While recognizing the potential for inconsistent verdicts being returned in these limited multiple-count cases, MAI–CR 3d 312.06, unlike MAI 2.06, ignores the fact that an inconsistent verdict or verdicts can result in other contexts. In any event, the fact remains that in instructing the jury, here, in its further deliberations to resolve the inconsistency in its verdict, there was no MAI–CR 3d required to be given by the trial court. The question then is what instruction, if any, the trial court should have given the jury to guide them in further deliberating on its verdict in the case.

In *State v. Peters,* 855 S.W.2d 345 (Mo. banc 1993), the Missouri Supreme Court, recognizing the potential for the jury being "unusually susceptible to reading into the judge's comments an inference that the judge, in rejecting their verdict, is looking for a particular result ... recommend[ed] that the court's instruction resubmitting the matter to the jury should be in writing...." *Id.* at 349. It then cited MAI 2.06 as a recommended written instruction for this purpose. *Id.* In this regard, it should be noted that MAI–CR 3d 312.06 was not yet in existence when the *Peters* court referred to MAI 2.06. Given this and the fact that they are almost identical, we can infer that if it had been, the supreme court would have recommended it as a model for instructing the jury when it is sent back for further deliberations, having attempted to return an impermissible verdict.

■ In a case, such as here, where there is no applicable MAI–CR and the trial court determines that an instruction is required nonetheless, Rule 28.02(d) requires that a not-in-MAI–CR instruction must be "simple, brief, impartial, and free

---

**4.** All references to this instruction are to MAI–CR 3d 312.06 [Oct. 1, 1995], which reads:

> "The Court cannot accept your verdicts as written. The verdicts are inconsistent as to Count(s) ___ [*Specify counts that are inconsistent.*]. You should examine your verdicts in light of all of the instructions. Do not destroy any of the verdict forms."

from argument." In reviewing Instruction No. 10 in this light, although in our view it would have been preferable for the trial court to have given an instruction modeled after MAI–CR 3d 312.06, we cannot say that the instruction violated the rule. The appellant does not argue on appeal that the instruction was neither simple, brief, nor free from argument, or that it misstated the law. As such, he is left to argue that it was not "impartial," in that it unduly highlighted the maximum jail sentence that could be recommended by the jury such that it was impermissibly persuaded to assess and declare the maximum jail sentence allowed, six months. We disagree.

Any fair reading of the instruction reveals that, in effect, all it did was reiterate what the State's verdict director had already instructed with respect to punishment options, except for clarifying the fact that it was required, in assessing and declaring punishment, to "specify" the exact term of imprisonment rather than a range. As such, the only "highlighting" that occurred, the reiteration of the range of the jail sentence that could be assessed and declared, resulted from the fact that the trial court was attempting to explain to the jury the inconsistency in their verdict that had to be resolved. In doing so, however, it should be pointed out, with respect to the instruction's impartiality, that the trial court reminded the jury that such assessment and declaration was contingent on its "desire" to impose a jail sentence, never suggesting the return of a particular verdict. In any event, the trial court's reference to the range of sentence in its explanatory instruction was necessary to an explanation of the inconsistency in the jury's verdict. Such a reference was in keeping with the giving of MAI 2.06 and its Notes on Use, which instruction was recommended by the court in *Peters,* 855 S.W.2d at 349, as a model

instruction. As such, we cannot find that the non-MAI-CR explanatory instruction given by the trial court unduly highlighted the range of punishment, rendering it impartial, or in any way confused or misled the jury.

Point denied.

## III.

In Point III, the appellant claims:

The trial court erred in denying movant's [5] objection to the State's ***introduction into evidence*** movant's failure to call forth a witness and allowing the State to comment on proposed testimony of witness as proof of guilt of movant in violation of movant's constitutional rights, both state and federal.

(Emphasis added.) The appellant admits in his brief that he failed to include this issue in his motion for new trial, as required by Rule 29.11(d), and that as such, he is limited to plain error review under Rule 30.20, the standard for which is set forth, *supra.*

▮▮▮ Contrary to the appellant's point relied on, we would initially note that the challenged comments of the prosecutor in closing argument were not evidence. *State v. Madison,* 997 S.W.2d 16, 21 (Mo. banc 1999); *State v. Kenley,* 952 S.W.2d 250, 270 (Mo. banc 1997). Logically then his claim with respect to plain error for the "introduction" of evidence has no merit. We would also note that in his argument on this point, he does not discuss error with respect to the trial court's "introduction" of evidence, as claimed in his point relied on, but in the context of plain error for the prosecutor's arguing matters in closing argument which were not in evidence, for which he cites one case as authority. This violates Missouri Rule of Criminal Procedure 30.06(c) (2000), which provides that the "statement of facts, points relied on, argument and appendix

---

**5.** We are unsure of the basis for appellate counsel's denomination of the appellant in

this point relied on as "movant."

shall be prepared as provided in Rule 84.04." In this respect, Rule 84.04(e) provides, in pertinent part: "The argument shall be limited to those errors included in the 'Points Relied On.'" As such, we need not review the appellant's claim that the prosecutor was arguing matters outside the evidence. Missouri Rule of Criminal Procedure 30.06(c) (2000); *State v. Evans*, 992 S.W.2d 275, 286 (Mo.App.1999). However, for the reasons discussed, *infra*, even if we were to gratuitously review the appellant's claim for plain error, it would still fail. *See State v. Gilpin*, 954 S.W.2d 570, 580 (Mo.App.1997) (*quoting State v. Rehberg*, 919 S.W.2d 543, 548 (Mo.App.1995)) (holding that in criminal cases "'it is preferable to decide cases on the merits to avoid punishing appellant for the shortcomings of appellate counsel'").

Although the appellant attempts to characterize the prosecutor's challenged comments in closing argument as comments on matters outside the record, that is an improper characterization of what the State was actually attempting to do, based on our review of the record. A fair reading of the record would indicate that what the prosecutor was asking the jury to do was draw an adverse inference from the fact that the appellant's father did not testify at trial in his defense. As to the propriety of the prosecutor doing this, the Missouri Supreme Court held in *State v. Neil*, 869 S.W.2d 734 (Mo. *banc* 1994):

If a defendant fails to call an available witness whom one might reasonably expect to testify in the defendant's favor, the prosecution may comment on that failure. The defendant's failure to call such a witness tends to create the logical inference that the defendant did not call the witness because the testimony of the witness would damage rather than assist the defense. In addition, if the facts make clear that the testimony of the witness would tend to favor the defendant, the court may justifiably find that the witness was "peculiarly available" to the defendant, thus giving rise to the adverse inference.

*Id.* at 739 (citations omitted); *see also State v. Basile*, 942 S.W.2d 342, 351 (Mo. *banc* 1997). As to the "peculiarly available" requirement, the court held that "[i]mplicit in the adverse inference is the assumption that the close family relationship between mother and son would make the mother more available to the defendant than to the State." *Neil*, 869 S.W.2d at 740. With these principles of law to guide us and given the fact that the witness in question here was the appellant's father, who, under the circumstances, would have been reasonably expected to testify favorably for the appellant, as argued by the prosecutor in closing argument, it was not error for the trial court to allow such argument, much less plain error as claimed by the appellant.

Point denied.

### Conclusion

The circuit court's judgment of the appellant's jury conviction for DWI, § 577.010, is affirmed.

BRECKENRIDGE, C.J., and SMART, J., concur.