**STATE of Missouri, Respondent,**

v.

**Nellie M. BARNABY, Appellant.**

**No. WD 60728.**

Missouri Court of Appeals,
Western District.

Dec. 17, 2002.

Jeremiah W. (Jay) Nixon, Attorney General, Sara L. Trower, Assistant Attorney General, Jefferson City, MO, for Respondent.

John R. Cullom, Kansas City, MO, for Appellant.

Before EDWIN H. SMITH, P.J., and LOWENSTEIN and HARDWICK, JJ.

EDWIN H. SMITH, Presiding Judge.

Nellie M. Barnaby appeals from the judgment of her conviction, after a jury trial in the Circuit Court of Dekalb County, of possession of a controlled substance on the premises of a correctional facility, § 217.360.[1] As a result of her conviction, the appellant was sentenced to a term of five years imprisonment in the Missouri Department of Corrections.

In the appellant's sole point on appeal, she claims that the trial court plainly erred in rereading, at the close of all the evidence, Instruction No. 1, which was patterned after MAI–CR 3d 302.01,[2] the mandatory instruction concerning the duties of the judge and jury in a criminal trial, including the jury's duty to determine the credibility of witnesses, because it violated Note on Use 2 of MAI–CR 3d 302.01, providing that "[this instruction] is not to be reread at the conclusion of the evidence."

We affirm.

## Facts

On September 9, 2000, the appellant traveled to Crossroads Correctional Center (Crossroads) in Cameron, Missouri, to visit her two sons, Shawn Barnaby and Robert Ritter, who were incarcerated there. Barnaby was serving a life sentence without parole on a conviction for first-degree murder, while Ritter was serving seven years on convictions for burglary and stealing. Corrections Officer Raechel Kelley, who was monitoring the visiting room that day, observed the appellant walk into the visiting room and noticed that she appeared to be "edgy." The appellant sat down at a table with her two sons and talked for awhile, then got up and went to the restroom. After returning, the appellant sat back down, at which time Officer Kelley witnessed her spit something into a half-empty M & M bag, which she had picked up from the table. The appellant then passed the bag to Barnaby, at which time Officer Kelley approached the table and confiscated the bag and its contents. Two balloons, containing a total of 3.04 grams of marijuana, were later found in the bag. A surveillance camera in the visiting room captured the entire incident on videotape.

On December 29, 2000, the appellant was charged by information in the Circuit Court of Dekalb County with possession of a controlled substance on the premises of a correctional center, § 217.360. The appellant was tried in a one-day jury trial on October 15, 2001. Prior to the introduction of evidence, the trial court read several jury instructions to the jury, including Instruction No. 1, patterned after MAI–CR 3d 302.01. Following the reading of

---

1. All statutory references are to RSMo 2000, unless otherwise indicated.

2. All references to this instruction are to MAI–CR 3d 302.01 (7–1–97), unless otherwise indicated.

the instructions, the State presented its evidence, which consisted of testimony from several police officers, a chemist with the Missouri State Highway Patrol, and Officer Kelley. In addition, the State also introduced the surveillance videotape which was viewed by the jury. The only two witnesses to testify in the appellant's defense were her two sons. Barnaby essentially took credit for the offense, testifying that he had placed the balloons of marijuana in the M & M bag and did not tell the appellant what he had done.

At the close of all of the evidence, the court recessed. During the recess, the required instruction conference was held. After the recess, the trial court proceeded to read to the jury eight instructions, including rereading Instruction No. 1. The jury then deliberated for several hours before returning with a guilty verdict, recommending a prison sentence of five years.

On November 9, 2001, the appellant filed a motion for judgment of acquittal or, in the alternative, for a new trial. On November 19, 2001, the trial court overruled the motion and sentenced the appellant to five years imprisonment.

This appeal follows.

## I.

In the appellant's sole point on appeal, she claims that the trial court plainly erred in rereading, at the close of all the evidence, Instruction No. 1, which was patterned after MAI–CR 3d 302.01, the mandatory instruction concerning the duties of the judge and jury in a criminal trial, including the jury's duty to determine the credibility of witnesses, because it violated Note on Use 2 of MAI–CR 3d 302.01, providing that "[this instruction] is not to

be reread at the conclusion of the evidence." Specifically, she claims that the trial court's rereading of the instruction "shortly after [her] sons had testified," "constituted an unfair repetition of the credibility instruction, and unfairly focused the jurors and directed them to place undue scrutiny on the testimony of appellant's only two witnesses." She contends that this improperly suggested to the jury that her sons' exculpatory testimony should not be believed in that: (1) they were biased and prejudiced due to their familial relationship to the appellant; and (2) they were not credible due to their being convicted felons serving prison sentences. Although the appellant raised her claim of instructional error in her motion for new trial, she concedes that she did not properly preserve it for our review in that she failed to make a specific objection at trial to the rereading of Instruction No. 1, as required by Rule 28.03.[3] *State v. Bradshaw,* 26 S.W.3d 461, 471 (Mo.App.2000). She, therefore, requests plain error review pursuant to Rule 30.20.

Rule 30.20 provides, in pertinent part, that "[w]hether briefed or not, plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." The plain error rule should be used sparingly and does not justify a review of every alleged trial error that has not been properly preserved for appellate review. *State v. Carr,* 50 S.W.3d 848, 853 (Mo.App.2001). In determining whether to exercise its discretion to provide plain error review, the appellate court looks to determine whether on the face of the appellant's claim substantial grounds exist for believing that the trial court committed

---

**3.** All rule references are to the Missouri Rules of Criminal Procedure (2002), unless otherwise indicated.

a "plain" error, which resulted in manifest injustice or a miscarriage of justice. *State v. Dudley*, 51 S.W.3d 44, 53 (Mo.App.2001). "Plain" error for purposes of Rule 30.20 is error that is evident, obvious and clear. *State v. Hibler*, 21 S.W.3d 87, 96 (Mo.App. 2000).

■ If the appellate court chooses to exercise its discretion to conduct plain error review, the process involves two steps. First, the court must determine whether the trial court committed error, affecting substantial rights, that was evident, obvious and clear. *Id.* As in the case of our review for "regular" error, not every obvious error found in plain error review mandates reversal. *Carr*, 50 S.W.3d at 853. In the case of review for "regular" error, to be reversible, the found error must have prejudiced the appellant. *State v. Taylor*, 67 S.W.3d 713, 715 (Mo.App.2002). Likewise, in the case of review for plain error, the found error must have prejudiced the appellant, except that such prejudice must rise to the higher level of manifest injustice or a miscarriage of justice. *State v. Cole*, 71 S.W.3d 163, 170 (Mo. *banc* 2002). Thus, even if obvious and clear error is found in the first step of the procedure, the second step of plain error review requires the court to determine whether manifest injustice or a miscarriage of justice resulted therefrom. *Hibler*, 21 S.W.3d at 96.

■ To succeed on appeal, the appellant has the burden to prove that instructional error resulted in manifest injustice or a miscarriage of justice. *Id.* Clear and obvious instructional error is rarely found to result in manifest injustice or a miscarriage of justice requiring reversal for plain error. *Id.* In the context of instructional error, reversible plain error results when the trial court has so misdirected or failed to instruct the jury that it is apparent to the appellate court that the instructional

error affected the jury's verdict. *State v. Deck*, 994 S.W.2d 527, 540 (Mo. *banc* 1999). Inasmuch as we do not find substantial grounds on the face of the appellant's claim for us to believe that the trial court committed evident, obvious, and clear error resulting in manifest injustice or a miscarriage of justice to the appellant, for the reasons discussed, *infra*, we decline plain error review.

In addressing alleged instructional error, we start with the proposition that if there is an MAI–CR instruction made applicable by the law or the Notes on Use, the trial court is required to instruct the jury based upon that instruction. Rule 28.02(c). The failure to give an instruction in violation of Rule 28.02 or any applicable Notes on Use is error, the prejudicial effect to be judicially determined. Rule 28.02(f); *State v. Altaffer*, 23 S.W.3d 891, 895 (Mo.App.2000).

■ Pursuant to Rule 27.02(e), the trial court is required in every felony jury trial to read, *inter alia*, MAI–CR 3d 302.01 to the jury. Note on Use 2 of this instruction reads: "This instruction will be Instruction No. 1, and will be read immediately following MAI–CR 3d 300.06. *It is not to be reread at the conclusion of the evidence*, but it must be given to the jury with other written instructions to be used during the jury's deliberations." (Emphasis added.) Here, there is no dispute that Instruction No. 1, which was patterned verbatim after MAI–CR 3d 302.01, was read, as required, immediately following MAI–CR 3d 300.06, the instruction which informs the jury on how the trial will proceed. There is also no dispute that in violation of Note on Use 2 of MAI–CR 3d 302.01, it was reread at the conclusion of all the evidence, constituting evident, obvious, and clear instructional error. However, there is a dispute over whether such error resulted in manifest injustice and a miscarriage of justice

as the appellant claims or was mere harmless error as the State contends.

Instruction No. 1, patterned after MAI–CR 3d 302.01, reads:

Those who participate in a jury trial must do so in accordance with established rules. This is true of the parties, the witnesses, the lawyers, and the judge. It is equally true of jurors. It is the Court's duty to enforce these rules and to instruct you upon the law applicable to the case. It is your duty to follow the law as the Court gives it to you.

However, no statement, ruling, or remark that I may make during the trial is intended to indicate my opinion of what the facts are. It is your duty to determine the facts and to determine them only from the evidence and the reasonable inferences to be drawn from the evidence. In this determination, you alone must decide upon the believability of the witnesses and the weight and value of the evidence.

In determining the believability of a witness and the weight to be given to testimony of the witness, you may take into consideration the witness' manner while testifying; the ability and opportunity of the witness to observe and remember any matter about which testimony is given; any interest, bias, or prejudice the witness may have; the reasonableness of the witness' testimony considered in the light of all of the evidence in the case; and any other matter that has a tendency in reason to prove or disprove the truthfulness of the witness.

Faithful performance by you of your duties as jurors is vital to the administration of justice. You should perform your duties without prejudice or fear, and solely from a fair and impartial consideration of the whole case.

In contending that manifest injustice and a miscarriage of justice resulted from the trial court's rereading of this instruction at the close of all the evidence, in violation of Note on Use 2, the appellant asserted in her brief that "the timing of the instruction, given shortly after appellant's sons testified, was critical and highly prejudicial to the appellant." She argues that it was critical in that her conviction came down to whether or not the jury believed her sons' testimony. As to the rereading of the instruction being highly prejudicial, she asserts that "by reading *MAI–CR 3D 302.01* to the jury twice, the trial court did in fact comment on the credibility of appellant's witnesses and did unfairly focus the jurors' attention on the motives of appellant's two (2) sons to lie for their mother." Thus, her argument as to manifest injustice is essentially twofold, that manifest injustice resulted from not only the rereading of the instruction, but its timing.

The State's evidence at trial primarily consisted of the eyewitness testimony of Corrections Officer Kelley and the prison surveillance videotape, which recorded the incident. Officer Kelley testified on direct examination that she witnessed the appellant spit something out of her mouth into the M & M bag and then hand the bag to Barnaby. Officer Kelley further testified that upon witnessing the appellant's suspicious behavior she confiscated the M & M bag, which was found to contain two small balloons filled with marijuana. As to the surveillance tape, it was played for the jury and showed, *inter alia,* the appellant spitting something into the M & M bag. From the State's evidence it was reasonable for the jury to conclude beyond a reasonable doubt that the appellant spit the balloons of marijuana into the M & M bag in order to deliver the drugs to her sons.

To counter the State's evidence, the appellant called two witnesses, the appellant's sons, Ritter and Barnaby. Ritter was a convicted felon serving prison sentences for burglary and stealing, and Barnaby was serving a life sentence without the possibility of parole on a conviction for first-degree murder. Ritter testified that although he was sitting at the table with his mother, he never saw her spit anything into the M & M bag. Barnaby essentially took credit for the offense, testifying that he picked up the balloons of marijuana from a vending machine and placed them into the M & M bag. He also testified that he had intended to swallow the balloons along with some of the M & Ms, but that the appellant picked up the M & M bag before he was able to do so.

The appellant claims that "shortly after [her] sons had testified" the trial court reread Instruction No. 1, and in doing so implicitly suggested to the jury that there was a problem with their credibility. However, the record does not support the fact that the instruction was read "shortly" after the appellant's sons testified. In that regard, the record indicates that at the close of all the evidence, a recess occurred during which the instruction conference was held. When court reconvened, the instructions were read to the jury, including the rereading of Instruction No. 1, in violation of Note on Use 2 of MAI–CR 3d 302.01. Although the record does not indicate the actual time that elapsed after the appellant's sons testified and the instructions were read, it is reasonable to infer that some period of time would have elapsed such that the prejudice claimed due to the instruction being reread "short-ly" after the testimony of her sons simply has no merit on its face.

▅▅▅ As to the rereading of Instruction No. 1 causing the jury to unduly focus on it, the appellant cites numerous cases for the proposition that it is error to give unfairly repetitious instructions.[4] However, in this case the dispute is not over whether the trial court erred in rereading Instruction No. 1; rather, the dispute is over whether manifest injustice resulted from that error. In that regard, it is clear to us from the face of the record that the jury was not caused to unduly focus on Instruction No. 1. What the record reflects is that when Instruction No. 1 was reread it was read together with the other instructions such that the trial court did not unduly highlight or emphasize the importance of that specific instruction. There is nothing to suggest to us that the trial court's rereading of Instruction No. 1 unduly focused the jury upon the credibility issue concerning the appellant's sons, nor did it improperly suggest that their testimony was inherently suspect, as the appellant claims. Hence, on the face of the appellant's claim and the record, we find no substantial grounds to believe that the trial court's rereading of Instruction No. 1 in any way caused the jury to undertake an overly critical review of the appellant's sons' testimony which led to the appellant's conviction for the charged offense. Thus, on the face of the appellant's claim and the record, manifest injustice or a miscarriage of justice does not appear such that we decline plain error review.

▅▅▅ Even assuming, *arguendo*, that the trial court's rereading of Instruction No. 1 did improperly focus the jury upon

---

4. The appellant cited *State v. Crow*, 346 Mo. 306, 141 S.W.2d 66 (Mo. *banc* 1940); *State v. Edmonds*, 347 S.W.2d 158 (Mo.1961); *State v. Amos*, 553 S.W.2d 700 (Mo. *banc* 1977); *State v. Borden*, 605 S.W.2d 88 (Mo. *banc* 1980); *State v. Engleman*, 653 S.W.2d 198 (Mo. 1983); *State v. Gray*, 549 S.W.2d 99 (Mo.App. 1977); *State v. Kent*, 602 S.W.2d 799 (Mo. App.1980); *State v. Glover*, 951 S.W.2d 359 (Mo.App.1997).

the appellant's sons' credibility and their possible motives to lie for the appellant, it is not readily apparent that the jury's verdict was in any way affected by the alleged instructional error. First, the appellant does not dispute the fact that Ritter and Barnaby were her sons and that they were convicted felons such that, under the credibility guidelines set forth in Instruction No. 1, it would have been reasonable and appropriate for the jury to consider those circumstances in determining the believability of the appellant's sons' testimony. Second, given the overwhelming evidence of the appellant's guilt, we seriously doubt that her case ultimately turned on any improper focusing on the credibility instruction. The real culprit in torpedoing the appellant's sons' testimony, in addition to their familial relationship to the appellant and their prior criminal convictions, was most likely the fact that their testimony was at complete odds with the State's eyewitness evidence, which did not suffer from the same credibility infirmities. Missouri courts have consistently held that no manifest injustice or miscarriage of justice results when guilt is established by overwhelming evidence. *State v. Shaw*, 14 S.W.3d 77, 84 (Mo.App.1999). Here there were essentially two eyewitnesses to the charged offense, one human and one mechanical. Regardless of how the jury felt about the credibility of the appellant's sons in light of their familial relationship to the appellant and their criminal convictions, it is doubtful that they would have believed their testimony in any event, given the overwhelming evidence of the appellant's guilt from essentially unimpeachable sources, such that its verdict would have been any different even if Instruction No. 1 had not been reread. In light of the foregoing, the appellant's argument that the rereading of Instruction No. 1 somehow suggested a credibility call that the jury would not have otherwise made in convicting her is without merit.

Point denied.

## Conclusion

The judgment of the circuit court convicting the appellant of possession of a controlled substance on the premises of a correctional facility, § 217.360, is affirmed.

LOWENSTEIN and HARDWICK, JJ., concur.