**50**

STATE of Missouri,
Plaintiff/Respondent,

v.

Oscar KRAMER, Defendant/Appellant.

Oscar KRAMER, Movant/Appellant,

v.

STATE of Missouri,
Respondent/Respondent.

Nos. 57151, 58341.

Missouri Court of Appeals,
Eastern District,
Division Three.

March 12, 1991.

Motion for Rehearing and/or Transfer to
Supreme Court Denied April 10, 1991.

Application to Transfer Denied
June 11, 1991.

Terrance Niehoff, Henry B. Robertson, Melinda K. Pendergraph, St. Louis, for defendant/appellant.

Willaim L. Webster, Atty. Gen., Joan F. Gummels, Asst. Atty. Gen., Jefferson City, for plaintiff/respondent.

REINHARD, Presiding Judge.

Defendant appeals after his conviction by a jury of stealing by deceit, § 570.030, RSMo 1986. He was sentenced as a prior offender, § 558.016, RSMo 1986, to serve a term of five years. After sentencing, defendant filed a Rule 29.15 motion which the trial court denied without an evidentiary hearing. Pursuant to Rule 29.15(l) these

appeals have been consolidated for review. We affirm.

Defendant was an attorney who was licensed to practice law in the state of Louisiana, and in the federal court for the Southern District of Illinois. After moving to Missouri he began working as a law clerk for a private attorney, Mr. Turner, while his application to sit for the Missouri bar examination was being processed. His duties included researching issues of law, conducting client interviews and answering the telephone. He had also, on several occasions, collected partial fee payments from Ms. Walker, the mother of one of Turner's criminal clients. While in Turner's employ, defendant represented himself as an attorney to Ms. Walker and told her that if she gave him $2,000 he would get her son out on bail. Ms. Walker testified that she was skeptical of defendant's claim but since she knew him through Mr. Turner's office she collected $2,000 in cash, gave it to defendant and demanded a receipt. She further testified that defendant told her he was taking the money to someone in Clayton and he promised her that her son would be "home for Thanksgiving." Mr. Turner's secretary testified that she had, at defendant's request, typed up the receipt for the bond money and had informed Mr. Turner of the transaction when he returned to the office. Mr. Turner testified that defendant was not assigned to the Walker case, that he had never given defendant permission to collect money for a bond and that he was not even representing Ms. Walker's son on the charges in St. Louis County. In addition, he said that when he had been informed of the transaction he had asked defendant to place the money in the law firm's escrow account for safekeeping. Turner testified that defendant refused, stating that the money had already been sent to California. Defendant testified that he had wired the money to a bail bondsman named Stephen Rice in California who had subsequently absconded with the funds. He explained that Ms. Walker's son had been calling him regularly from jail and that he originally intended to use standard procedures for bail until he discovered that the prisoner

was a poor risk for bond, having attempted to escape confinement. It was then he decided to use an out-of-state bondsman to guarantee the bail. The state also presented testimony from a state official who said that an out-of-state bail bond was not legal in Missouri unless the individual was licensed in the State of Missouri. This witness also confirmed that neither defendant nor Stephen Rice were licensed bondsmen. Defendant's son testified that he had used the services of Western Union to wire money to Stephen Rice, the alleged bondsman in California, at the request of his father. As a rebuttal witness, the state produced an employee of Western Union who testified that the money order to California was sent five days before Ms. Walker gave money to the defendant.

On the morning of the third day of trial the assignment judge of the circuit, rather than the trial judge, opened court and announced that the trial judge was ill. The jury was sent to lunch and the assignment judge conferred with counsel. The assignment judge proposed to recess the trial from that day, Thursday, until Monday with the expectation that the trial judge would be able to return. Defense counsel objected, citing prejudice to his client and asked for a mistrial. The substitute judge deferred ruling upon this request until the regular judge returned. Defense counsel then asked that the jury be questioned about possible hardship because of the delay. One juror said she could not return on Monday. The assignment judge, with the agreement of the ailing trial judge, excused her and seated the alternate. The court then recessed and the trial resumed on Monday with the original trial judge presiding. Defendant then renewed his objection and asked again for a mistrial claiming that both the delay and the juror substitution were prejudicial to him. His motion was denied. Defendant was found guilty of stealing by deceit and sentenced by the court to 5 years in prison. This appeal followed.

■ Defendant contends that the trial court erred in refusing his offered instruction on claim of right, § 570.070.2, RSMo

**52**

1986, because defendant had "adduced evidence that [defendant] took Ms. Walker's $2,000 with the honest belief that, as Mr. Turner's employee, he had the right to do so in order to obtain Ms. Walker's son's release on appeal bond."

Section 570.070 defines claim of right:
1. A person does not commit an offense under Section 570.030 if, at the time of the appropriation, he
(1) Acted in the honest belief that he had the right to do so; or
(2) Acted in the honest belief that the owner, if present, would have consented to the appropriation.
2. The defendant shall have the burden of injecting the issue of claim of right.
§ 570.070, RSMo 1986.

Since the defendant has the burden of injecting the issue of claim of right into the case, if he has not done so then no instruction is required. *State v. Hontz*, 655 S.W.2d 590, 592 (Mo.App.1983). In order to meet this requirement the defendant must "adduce evidence of facts from which, in the context of the entire case, the honesty of the defendant's belief can be reasonably inferred." *Id.* The "subjective conclusions" of the defendant are not enough to warrant submission of the instruction to the jury. *State v. Shubert*, 747 S.W.2d 165, 167 (Mo.App.1988). Defendant's evidence falls short of this standard. His assertion that his position as Turner's employee conferred the right to collect the money for the bond is the only evidence of claim of right. Arrayed against this "subjective conclusion" is substantial evidence that defendant's actions were in violation of both the standard practices of the office in which he worked and state law regulating bondsmen. We note that in *Hontz*, *supra*, the court relied on defendant's experience in the farm equipment business as support for the trial court's denial of a claim of right instruction saying that:

It was implausible that Hontz, with experience himself in the farm imple-

ment business, would undertake extrajudicial recovery of a valuable item of equipment without any documentation of his authority to act and with no demonstration or verification of the basis on which the creditor asserted a right to possession of the equipment. *Hontz* at 592.

Similarly, the court in the present case was justified in considering defendant's education and experience as a lawyer. We find no error in the trial court's refusal of this instruction.[1]

■ Defendant also contends:
THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S OBJECTION AND DENYING APPELLANT'S REQUEST FOR A MISTRIAL WHEN A JUDGE, THE HONORABLE ROBERT H. DIERKER, SUBSTITUTED HIMSELF FOR THE HONORABLE CHARLES D. KITCHEN WHO BECAME ILL, BECAUSE THE SUBSTITUTION DENIED APPELLANT DUE PROCESS AND A FAIR TRIAL AS GUARANTEED BY THE 5TH, 6TH AND 14TH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE 1, SECTIONS 10 AND 18(A) OF THE MISSOURI CONSTITUTION IN THAT THE SUBSTITUTION CAME DURING THE DEFENSE CASE AFTER PART OF THE EVIDENCE HAD BEEN ADDUCED BUT BEFORE A VERDICT WAS RETURNED AND THE SUBSTITUTE JUDGE MADE RULINGS TO CONTINUE THE CASE FOR FOUR DAYS AND TO DISMISS A JUROR AND SEAT AN ALTERNATE.

In *State v. Tettamble*, 450 S.W.2d 191, 193 (Mo.1970), the presiding judge's term expired after the verdict was entered but before sentencing. After discussing case law, both federal and from other states, the court affirmed, concluding that "courts must continue despite death, resignation, illness, or expiration of term of a prior judge, ..." *Id.* However, in *State v.*

---

1. We note also that the instruction offered was from MAI–CR 2d rather than MAI–CR 3d. The format of the instruction for claim of right has been dramatically restructured by the third edi-

tion. Thus, defendant's instruction was also not acceptable in the form presented. *See State v. Winkelmann*, 761 S.W.2d 702 (Mo.App.1988).

*Davis*, 564 S.W.2d 876 (Mo. banc 1978), the trial judge became ill after the state and defendant had rested their case. The case was adjourned for a day. The next day, another judge was assigned. He proceeded with the case over the objection of the defendant. The substitute judge overruled defendant's motion for a mistrial and ruled on all pending motions. He also sentenced defendant after having found him to be an habitual criminal. In reversing and remanding the court said:

> No Missouri case has decided the issue of whether, in a criminal cause, a new judge may be substituted for a judge who becomes disabled after evidence has been presented but before instructions have been given and final arguments had. Cases in other jurisdictions have held it is reversible error to substitute a judge at a similar point in a trial without the consent of the defendant. (citations omitted). We are unable to find any state court case approving of such a substitution. *Davis* at 878, 879.

Defendants, relying on *Davis*, argue, in effect, that a special judge could take no action whatsoever in any case where the presiding trial judge was disabled. In *Medley v. State*, 639 S.W.2d 401 (Mo.App.1982), a post-conviction case, we reviewed movant's claim that he was entitled to relief because the verdict was received by a judge other than the regular trial judge. In distinguishing *Davis* we said:

> The judicial substitution in *Davis* took place prior to rulings on: (1) a motion to suppress identification; (2) a motion for judgment of acquittal; (3) a determination of the instructions to be read; and (4) final argument. In the present case Judge Palumbo performed only a ministerial duty of receiving the verdict. In view of the fact that the movant has failed to allege why the substitution was prejudicial, we find movant's final contention to be without merit. *Medley* at 404.

Here we are confronted with circumstances that are somewhere in between the performing of a ministerial duty, and the making of significant rulings affecting the merits of the case by a special judge presiding over an important phase of the trial. Here the same judge performed all duties in this case other than the adjournment or recess and the excusing and substituting of the alternate juror.

It is clear that in *Davis* the ill trial judge did not grant the adjournment or recess, nor was the reversal based in any manner on that act. Further, the exclusion of the juror, while much more significant than the receiving of the verdict, did not rise to the level of decisions on principal motions in the case such as ruling on evidentiary matters and the sentencing of the defendant under the habitual criminal act.

In *State v. Woods*, 705 S.W.2d 76 (Mo. App.1985), this court reviewed a case wherein the trial judge had excused a juror during trial because her previously scheduled vacation was going to conflict with the trial because of its unexpected length. Defendant argued that the juror was not unable or disqualified from performing her duties but was merely inconvenienced. He also argued that he was prejudiced by the substitution of a white male juror for a white female juror because the charges were rape, felonious restraint and armed criminal action. In affirming the court said:

> We do not decide whether the court's action excusing Juror Max was error under these circumstances because we find not a shred of evidence pointing to any prejudice to defendant. Relief cannot be granted where defendant has failed to demonstrate how he was prejudiced by the court's action. (citation omitted) Nor do we agree with defendant's contention that the excusal of Juror Max and the substitution of the alternate male juror resulted in the denial of a fair and impartial jury he had chosen. Section 464.065 requires that alternate jurors be selected in the same manner, have the same qualifications, and be subject to the same examination as principal jurors. (citations omitted) Thus, we find no error in the substitution of the juror in this case. *Woods* at 78.

Here the alternate juror heard the same evidence the excused juror heard and was a part of the trial from the beginning to the end. The principal judge after his return to the courtroom was confronted with defendant's motion for a mistrial because of the adjournment and the action on the juror. He also was faced with these issues in defendant's motion for new trial. He denied defendant's motion for mistrial and overruled his motion for a new trial and thus by implication found no prejudice. Our review of the record supports this determination. Finding no prejudice we conclude that defendant's point is without merit.

Defendant's final point on appeal contends that the trial court erred in denying his motion for post-conviction relief without an evidentiary hearing. Specifically, he asserts that his defense counsel failed to subpoena or depose three witnesses who defendant asserts would have been helpful to his defense. We find his contentions to be without merit. To prevail on an ineffective assistance of counsel claim, a movant must show that counsel's performance was deficient and that the deficient performance prejudiced his defense. Both of these requirements must be met. *Boyd v. State*, 759 S.W.2d 849, 851 (Mo.App. 1988). At the sentencing hearing the motion court questioned defense counsel under oath regarding the absence of these witnesses and concluded that defense counsel had done "all he could within the time limits granted him ... and was not thereby guilty of ineffective assistance of counsel." Our review convinces us that the findings and conclusions of the motion court are not clearly erroneous. *Childress v. State*, 778 S.W.2d 3, 5 (Mo.App.1989).

The judgments are affirmed.

STEPHAN and CRANE, JJ., concur.