STATE of Missouri, Respondent,

v.

Mardell Lynn JANUARY, Appellant.

No. WD 64109.

Missouri Court of Appeals,
Western District.

Nov. 22, 2005.

Jeremiah W. (Jay) Nixon, Atty. Gen., Karen L. Kramer, Assistant Attorney General, Jefferson City, MO, for Respondent.

Margaret M. Johnston, Assistant State Public Defender, Columbia, MO, for Appellant.

Before SMITH, C.J., and ULRICH and BRECKENRIDGE, JJ.

EDWIN H. SMITH, Chief Judge.

Mardell January appeals the judgment of her convictions, after a jury trial in the Circuit Court of Ray County, of second-degree burglary, § 569.170,[1] and stealing, § 570.030. As a result of her convictions, she was sentenced, as a prior and persistent offender, § 558.016, to concurrent prison terms of eight years in the Missouri Department of Corrections.

The appellant raises two points on appeal. In Point I, she claims that the trial court plainly erred in giving Instruction No. 9, the State's verdict director for Count II, stealing, § 570.030, which was patterned after MAI–CR 3d 324.02.1 (6–27–03), because it failed, as required by Note on Use 5, to instruct the jury on a claim-of-right defense. In Point II, she asserts the same claim of error that she asserts in Point I, except as to the Count I offense, burglary. In addition, she claims in Point II that the trial court plainly erred in failing to give a special negative defense instruction, instructing the jury to consider whether the requisite *mens rea* of the offense of burglary had been negated, because there was evidence in the record, which if believed by the jury, demonstrated that the appellant did not knowingly enter unlawfully the structure from which the items of property in the underlying stealing offense were taken.

We reverse and remand for a new trial.

## Facts

On November 24, 2003, the appellant was charged in the Circuit Court of Ray County, in a second-amended information, in Count I with the class C felony of burglary in the second degree, in violation of § 569.170, which reads, in pertinent part: "A person commits the crime of burglary in the second degree when he knowingly enters unlawfully or knowingly remains unlawfully in a building or inhabitable structure for the purpose of committing a crime therein." The State alleged in Count I that on February 25, 2003, the appellant: "either acting alone or knowingly in concert with others, entered unlawfully in a building, located at 34030 West 204th Street, and owned or possessed by Missouri United Methodist Camping and Retreat Ministry, for the purpose of committing stealing therein." In Count II, she was charged with the class C felony of stealing, in violation of § 570.030, which reads, in pertinent part: "A person commits the crime of stealing if he or she appropriates property or services of another with the purpose to deprive him or her thereof, either without his or her consent or by means of deceit or coercion." The State alleged in Count II that on February 25, 2003, the appellant:

---

1. All statutory references are to RSMo 2000, unless otherwise indicated.

either acting alone or knowingly in concert with others, appropriated three chainsaws, Coleman [a]ir compressor, Craftsman 18V cordless drill, Makita Hypoid saw, plunge router, Makita Disc grinder, and a Homelite yard sweeper vacuum, of a value of at least five hundred dollars, which property was owned by Missouri United Methodist Camping and Retreat Ministry, and [the appellant] appropriated such property without the consent of Missouri United Methodist Camping and Retreat Ministry and with the purpose to deprive them thereof.

The appellant was charged as a prior and persistent offender, pursuant to § 558.016. In that regard, the State alleged that she had been convicted previously of attempted robbery in the second degree, possession of a controlled substance, forgery twice, and attempted forgery.

On February 25, 2003, the appellant and Brad Hisek (B.Hisek), an acquaintance of hers, drove, in the appellant's vehicle, to the "Wilderness Camp" (the Camp), which was owned by the United Methodist Church Camping and Retreat Ministry. B. Hisek's father, Dennis Hisek (D.Hisek), the Camp's executive director, resided at the Camp, which is a 320-acre facility located in a rural area of Ray County, at 34030 W. 204th Street. B. Hisek was charged in the same incident with the same offenses as the appellant. However, rather than going to trial, he pled guilty to both offenses. He testified for the State at the appellant's trial.

B. Hisek testified that his purpose for going to the Camp on February 25, 2003, was to ask his father for the money for a bus ticket back home to San Antonio. He stated that his "fiancé was needing [him] home [San Antonio], so [he] told [himself he] was going to get there." He asked the appellant to give him a ride to the Camp because he did not have any transportation.

When they first arrived, B. Hisek did not drive up to the actual campsite, but stopped at a bridge and walked up, leaving the appellant behind. He testified at the appellant's trial:

Very first thing I did was I stopped at the—there's a bridge by the camp that's like a big old steel pipe thing. I stopped there and I toted away in the car while I walked up to the camp to see my father there. I was going to let her walk there so he wouldn't think anything suspicious. So, I did that and I came back, and then I, I drove the car up to the camp and waited to see if he was going to be showing.

They parked by the Camp shop, where its tools and equipment were stored.

To gain entry to the shop, B. Hisek "slid" through a "dog hole" or door. He testified that he was not in a position to see if the appellant was watching him when he entered the shop, but that she "probably" could have if she were looking while sitting in her vehicle. He testified that he did not tell her what he was going to do once inside the building, but did tell her to keep "buss," slang for "watch out." Once in the shop, B. Hisek gathered up three chainsaws and put them in the main tool room. At that time, he heard a car coming and the appellant stepping out of her vehicle and saying, "Someone's coming." He then ran outside and shut the door.

The "someone" that was coming turned out to be B. Hisek's father, D. Hisek. He was leaving the Camp to attend a Rotary meeting and noticed a vehicle parked by the Camp's shop. He was not expecting anyone and did not recognize the vehicle, so he drove over to the shop to investigate. As he approached, he saw a man walking toward him. At first he did not recognize

the man as being his son. As the man got closer, however, he realized who it was. He was surprised to see him since B. Hisek was not allowed on Camp property, and they were not on good terms. According to D. Hisek, B. Hisek was not allowed on Camp property "[b]ecause of the problems [he and his wife had] had with him in the past and some of the things that [he'd] done." When D. Hisek arrived, the appellant immediately got back into her vehicle and was never introduced to D. Hisek.

After exchanging brief greetings, D. Hisek advised B. Hisek that before he came to visit at the Camp, he had to call and make an appointment. B. Hisek testified that he told his father that he needed help and asked him for money to purchase a bus ticket to return to San Antonio. D. Hisek told him, "No, son. I've got to go." D. Hisek further advised B. Hisek that he would have to leave. D. Hisek waited and followed B. Hisek and the appellant out of the Camp to make sure that they left. B. Hisek was driving. After leaving the Camp, D. Hisek went in one direction while B. Hisek and the appellant went in another. Within minutes, however, B. Hisek and the appellant headed back to the Camp. B. Hisek told appellant that he was angry with his father because he did not have time to talk to him. He told her, "I'm going to go." He testified that: "I already had all the tools and everything inside the sectioned part of the shop ready to go by the air compressor. And I said, 'We're going to go back and pick it up.'" B. Hisek testified that he would not have stolen the items if his father had agreed to finance his bus ticket back to San Antonio.

After arriving back at the Camp, B. Hisek pulled up to the shop and opened the hatchback on the appellant's car. He and the appellant then entered the shop and removed three chainsaws, an air compressor, a cordless drill, a saw, a plunge router, a grinder, and a lawn vacuum. They ran into the shop and ran back out, putting the items in the appellant's vehicle, "real fast." The appellant helped B. Hisek carry out the stolen items and load them into her car. Although B. Hisek testified that he told the appellant that the items were his, he assumed that she knew they were not because she knew of his criminal record and that he was angry with his father.

After leaving the Camp, B. Hisek and the appellant drove to Excelsior Springs, where they stopped at a pawnshop for the appellant to pawn the grinder for $10. Pete Quinn, the proprietor of the pawnshop refused the other property. The only reason why Quinn took the grinder in pawn was because B. Hisek convinced him he needed gas money to get back to Kansas City. Because B. Hisek did not have any acceptable identification, the appellant gave Quinn her driver's license to complete the transaction.

After getting gas, B. Hisek and the appellant drove to Kansas City, where they found a pawnshop to pawn the three chainsaws for approximately $100. Once again, the appellant provided the necessary identification to complete the transaction and signed the pawn ticket. As to the lawn vacuum and cordless drill, the appellant later sold them to an acquaintance in exchange for drugs.

Upon returning to Camp from his Rotary meeting, D. Hisek spoke to the maintenance man, Steve Bales. He told him that B. Hisek had been there and that he should check to make sure nothing was missing from the shop. Shortly thereafter, Bales called D. Hisek and reported that three chainsaws, a leaf blower, a Makita grinder, a cordless drill, a small Skil saw, a 27–gallon Coleman air compressor, and a router were missing. The three chainsaws were valued at $1200 to $1500,

the air compressor at $400, the cordless drill at $150, and the leaf blower at $100.

D. Hisek and Bales contacted several pawnshops in the area, including the pawnshop in Excelsior Springs where B. Hisek had pawned the grinder for $10. In a conversation with Quinn, the proprietor, D. Hisek learned that the appellant and a "black man" had recently been in the shop, and had pawned the grinder and had attempted to pawn other items of property described as being stolen from the Camp. B. Hisek is an African American. D. Hisek called the Ray County Sheriff's Department and reported the thefts. Within a few days, D. Hisek accompanied Deputy John Davis of the Ray County Sheriff's Department to various pawnshops in Excelsior Springs and Kansas City, where they recovered the grinder and three chainsaws, which were returned to the Camp. The rest of the items that were stolen were never recovered.

The appellant's case proceeded to a two-day jury trial, commencing on January 21, 2004. The appellant presented testimony from Stephen Ray Murphy, who was an inmate in the Carroll County jail where B. Hisek was awaiting trial. Murphy testified that B. Hisek told him about his case and how he stole from his father. He also told him that the appellant had helped him take the items, but that he had told her that the property was his. Murphy also testified that B. Hisek told him that a day or two after taking the property from the Camp, he stole the appellant's car, checkbook, and credit cards, resulting in his being charged in Kansas. Murphy testified that B. Hisek told him that because he was angry at the appellant for reporting his stealing from her, resulting in his being charged in Kansas, he told the authorities

that the appellant was a knowing and willing participant in the theft and burglary at the Camp.

At the instruction conference, at the close of all the evidence, the State submitted its verdict director for Count II, stealing, Instruction No. 9, which was patterned after MAI–CR 3d 324.02.1. The appellant objected to the trial court's giving this instruction on the basis that it did not require the jury to find a culpable mental state. The objection was overruled. The State also submitted its verdict director for Count I, second-degree burglary, Instruction No. 7, which was patterned after MAI–CR 3d 323.54, which was the verdict director for Count I, second-degree burglary. The appellant did not object to the giving of that instruction.

On January 22, 2004, the jury returned guilty verdicts on both counts. The appellant did not file a motion for new trial. The trial court, having previously found the appellant to be a prior and persistent offender, as charged, sentenced her to concurrent prison terms, in the Missouri Department of Corrections, of eight years on Count I for second-degree robbery and eight years on Count II for stealing.

This appeal follows.

### Standard of Review

The appellant concedes that she did not properly preserve, for appellate review, her claims of instructional error in Points I and II, as to Instruction No. 9 in Point I and Instruction No. 7 in Point II, in that she failed to object to the trial court's giving those instructions, and she failed to present these claims in a motion for new trial. *See* Rule 28.03;[2] *State v. Smith*, 154 S.W.3d 461, 464 (Mo.App.2005). She,

---

2. All rule references are to the Missouri Rules of Criminal Procedure, 2004, unless other-

wise indicated.

therefore, requests plain error review, pursuant to Rule 30.20.

Rule 30.20 provides, in pertinent part, that "[w]hether briefed or not, plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or a miscarriage of justice has resulted therefrom." The plain error rule should be used sparingly and does not justify a review of every alleged trial error that has not been properly preserved for appellate review. *State v. Carr,* 50 S.W.3d 848, 853 (Mo.App.2001). In determining whether to exercise its discretion to provide plain error review, the appellate court looks to determine whether on the face of the appellant's claim substantial grounds exist for believing that the trial court committed clear and obvious error, which resulted in manifest injustice or a miscarriage of justice. *State v. Dudley,* 51 S.W.3d 44, 53 (Mo.App.2001). "Plain" error, for purposes of Rule 30.20, is error that is evident, obvious, and clear, and results in manifest injustice or a miscarriage of justice. *State v. Hibler,* 21 S.W.3d 87, 96 (Mo.App.2000).

If the appellate court chooses to exercise its discretion to conduct plain error review, the process involves two steps. First, the court must determine whether the trial court committed error, affecting substantial rights, that was evident, obvious and clear. *Id.* As in the case of our review for "regular" error, not every obvious error found in plain error review mandates reversal. *State v. Barnaby,* 91 S.W.3d 221, 225 (Mo.App.2002). In the case of review for "regular" error, to be reversible, the error found must have prejudiced the appellant. *State v. Taylor,* 67 S.W.3d 713, 715 (Mo.App.2002). Likewise, in the case of review for plain error, the error found must have prejudiced the appellant, except that such prejudice must rise to the level of manifest injustice or a miscarriage of justice. *State v. Cole,* 71 S.W.3d 163, 170 (Mo. *banc* 2002). Thus, even if obvious and clear error is found in the first step of the review, the second step of plain error review requires the court to determine whether manifest injustice or a miscarriage of justice resulted therefrom. *Hibler,* 21 S.W.3d at 96.

## I.

In Point I, the appellant claims that the trial court plainly erred in giving Instruction No. 9, the State's verdict director for Count II, stealing, § 570.030, which was patterned after the applicable MAI–CR, MAI–CR 3d 324.02.1, because it failed, as required by Note on Use 5, to instruct the jury on a claim-of-right defense, as provided in § 570.070, based on the appellant's contention that there was evidence adduced at trial sufficient to inject the issue. Specifically, she claims that she carried her burden of injecting the issue of a claim-of-right defense, requiring the jury to be instructed on that issue in that there was evidence adduced at trial, which if believed by the jury, demonstrated that she had an honest belief that she had a right to appropriate or take the allegedly stolen property. We agree.

To succeed on her claim of instructional plain error in this point, the appellant has the burden of proving not only that Instruction No. 9 was clearly and obviously in error for failing to instruct on the issue of a claim-of-right defense, but that the error resulted in manifest injustice or a miscarriage of justice. *Id.* Instructional error, even if clear and obvious, is rarely found to result in manifest injustice or a miscarriage of justice, requiring reversal for plain error. *State v. Roe,* 6 S.W.3d 411, 415 (Mo.App.1999). Instructional plain error requires reversal only where the trial court has so misdirected or

failed to instruct the jury that it is readily apparent to the appellate court that it affected the jury's verdict. *State v. Deck,* 994 S.W.2d 527, 540 (Mo. *banc* 1999).

When addressing alleged instructional error in a criminal case, we begin with the proposition that if there is an MAI–CR instruction made applicable by the law or the Notes on Use, the trial court is required to instruct the jury in accordance with that instruction. Rule 28.02(c). The failure to give an instruction in accordance with the applicable MAI–CR or Notes on Use is error, the prejudicial effect to be judicially determined. Rule 28.02(f).

 Here, the appellant was charged, in Count II, with the class C offense of stealing, in violation of § 570.030. Note on Use 1 of MAI–CR 3d 324.02.1 provides that this instruction is the mandatory MAI–CR for that offense. Note on Use 5 of that instruction requires, if supported by the evidence, that a paragraph be added to the instruction, as paragraph fourth, instructing the jury on the claim-of-right defense, found in § 570.070. Section 570.070 reads, in pertinent part:

> 1. A person does not commit an offense under section 570.030 if, at the time of the appropriation, he
>
> (1) Acted in the honest belief that he had the right to do so; or
>
> (2) Acted in the honest belief that the owner, if present, would have consented to the appropriation.

The optional claim-of-right-defense paragraph of the instruction, as provided in Note on Use 5 of MAI–CR 3d 324.02.1, reads:

> Fourth, that defendant did not honestly believe [*Insert one or both of the following. Omit brackets and number.*]
>
> [1] that he had a right to (take) (obtain) (use) (transfer) (conceal) (re-

tain) such (property) (services) (,) (, or)

> [2] that ([*name of owner*]) (the owner), if present, would have consented to the (taking) (obtaining) (using) (transferring) (concealing) of such (property) (services)[.]

Section 570.070.2 provides that defendant shall have the "burden of injecting the issue" of claim-of-right defense. The "burden of injecting the issue" in § 570.070.2 means that the issue of the claim-of-right defense of § 570.070 will be submitted to the trier of fact if supported by the evidence. § 556.051(1); *State v. Quisenberry,* 639 S.W.2d 579, 583 (Mo. *banc* 1982).

The appellant contends that she introduced sufficient evidence on the issue of a claim-of-right defense, requiring the trial court, in accordance with Note on Use 5 of MAI–CR 3d 324.02.1, to instruct the jury on that issue, such that, in order to convict her of stealing, as charged, the State should have had the burden of proving at trial that she did *not* have an honest belief that she had a right to take the alleged stolen property. The State contends that the appellant did not carry her burden of injecting the issue of the claim-of-right defense such that the trial court did not err, plain or otherwise, in failing to instruct on that issue. We disagree.

 Since the burden of injecting the issue of the appellant's claim-of-right defense was on her, in accordance with § 570.070.2, the trial court was not required to instruct the jury on that issue, unless it was supported by the evidence. § 556.051(1); *Quisenberry,* 639 S.W.2d at 583. Pursuant to § 570.070, to inject the issue of a claim-of-right defense, the appellant had the burden of adducing evidence that would demonstrate that she had an honest belief that she had a right to take

the property that was allegedly stolen.[3] *Quisenberry,* 639 S.W.2d at 583; *State v. Smith,* 684 S.W.2d 576, 580 (Mo.App.1984). In that regard, the defendant must adduce evidence "from which in the context of the entire case, the honesty of his belief can reasonably be inferred." *Smith,* 684 S.W.2d at 580. In the absence of any evidence from which it can reasonably be inferred that the property in question was taken under a claim of right, the trial court does not err in not instructing on that issue. *Quisenberry,* 639 S.W.2d at 583. Likewise, the trial court does not err in not instructing on the claim-of-right defense if the only evidence supporting its submission is the testimony of the defendant concerning his subjective belief as to his right to take the property in question. *Id.*

In contending that the appellant did not inject the issue of a claim-of-right defense, requiring the trial court to instruct the jury on that issue, the State is essentially arguing that the trial court could consider its evidence of alleged facts that demonstrated that the appellant did not have an honest belief that she had a right to take the property in question. In other words, the State is contending that the trial court was not required to view the evidence in a light most favorable to the appellant in determining whether she had properly injected the issue of the claim-of-right defense, but could consider facts that were in dispute. Of course, this would require the trial court to assume the traditional role of the jury of determining disputed facts, including making credibility calls. Logically, weighing the competing evidence as to the issue of whether the appellant had an honest belief that she had a right to take the

alleged stolen property would be for the jury in determining the ultimate issue of the claim-of-right defense, once instructed upon.

The State's approach, having the trial court determine and weigh the facts in deciding whether to instruct on a claim-of-right defense, ignores the general distinction between the burden of injecting an issue and the burden of proving an issue. For example, in determining whether a defendant has carried his burden of injecting the issue of self-defense, in accordance with § 563.031.4, it is well settled that the evidence must be viewed in a light most favorable to the defendant. *Vogel v. State,* 31 S.W.3d 130, 141 (Mo.App.2000). Logically, the same standard would apply in any case involving the "burden of injecting the issue"; otherwise, despite the definition of that concept applying equally throughout the criminal code, pursuant to § 556.051, its actual application would be different from case to case.

The *Vogel* standard, viewing the evidence in a light most favorable to the defendant in determining whether he has carried his burden of injecting an issue in a case, is consistent with § 570.070 and Note on Use 5 of MAI–CR 3d 324.02.1, both of which only require the introduction of evidence of an honest belief. It is also consistent with the cases holding that the evidence must be more than a mere assertion of the defendant's subjective belief, as to his right to take the alleged stolen property, to warrant an instruction on a claim-of-right defense.

In support of its contention that the appellant did not inject the issue of a

**3.** There are two situations under § 570.070 that indicate a claim-of-right defense is appropriate. The appellant is claiming that she alleged circumstances that allowed her to use the claim-of-right defense outlined in

§ 570.070.1(1), where a defendant has a claim-of-right defense if he or she "[a]cted in the honest belief that he [or she] had a right to [appropriate the property of another.]"

claim-of-right defense, the State cites three cases, *Quisenberry,* 639 S.W.2d at 582–83; *State v. Hontz,* 655 S.W.2d 590, 592 (Mo.App.1983); *State v. Kramer,* 809 S.W.2d 50, 52 (Mo.App.1991), for the proposition that where a defendant asserts he or she had an honest belief, and that assertion flies in the face of the surrounding facts of the taking, the trial court does not err in failing to instruct on a claim-of-right defense. However, none of the cases the State cites stand for that proposition.

In *Quisenberry,* the Court explained that the claim-of-right instruction had to be instructed upon if supported by evidence and held that the trial court was correct in omitting the claim-of-right instruction because neither the defendant nor the State presented any evidence to support it. 639 S.W.2d at 583. As to the other two cases cited by the State, the appellate courts upheld the trial court's rejection of the defendants' requests for claim-of-right instructions because they were supported solely by the defendants' own subjective statements, "without confirmation from attendant facts and circumstances lending 'color' to the claim." *Hontz,* 655 S.W.2d at 592. Hence, none of the cases cited by the State stand for the proposition that in determining whether the defendant has carried his burden of injecting the issue of a claim-of-right defense, the trial court is to consider and weigh all the evidence in the record. Taken together, the holdings of the cases cited suggest only that to inject the issue of a claim-of-right defense, there must be evidence in the record, which if believed by the jury, supports the fact that the defendant had an honest belief he had a right to take the property in question and that the issue is not injected if the only evidence is the defendant's uncorroborated "subjective conclusion" that he had such a belief. *Quisenberry,* 639 S.W.2d at 582–83;

*Hontz,* 655 S.W.2d at 592–93; *Kramer,* 809 S.W.2d at 52.

■ Accepting the fact that, in determining whether the evidence was sufficient to satisfy the appellant's burden of injecting the issue of a claim-of-right defense, we are to view the evidence in a light most favorable to the appellant, the issue then becomes in this case whether there was sufficient evidence adduced at trial from which the jury could have reasonably inferred that the appellant had an honest belief of her right to take the Camp's property, which the State alleged she stole, along with B. Hisek. In contending that the evidence was sufficient to require the trial court to instruct the jury, in the State's verdict director for stealing, Instruction No. 9, on a claim-of-right defense, the appellant points to the testimony of B. Hisek and Murphy. In that regard, Murphy testified that B. Hisek had advised him that he had told the appellant that they were at the Camp to retrieve items of property that belonged to him. B. Hisek admitted at trial, under questioning by both the State and defense, that he had told the appellant that the items of property that were stolen were his. Murphy also testified that B. Hisek had told him that he implicated the appellant in the burglary and theft from the Camp to get even with her for reporting to the police that he had stolen from her. This evidence alone was sufficient for the jury to infer, if believed, that she had an honest belief that she had a right to take the alleged items of stolen property from the Camp. As such, the trial court was obligated to instruct the jury in Instruction No. 9 on the issue of a claim-of-right defense.

■ Although required, the State's verdict director for stealing failed to instruct the jury on the issue of the appellant's claim-of-right defense, by adding the mandated language of MAI–CR 3d

324.02.1, as paragraph fourth. The appellant did not object to the giving of Instruction No. 9 for the failure to instruct on the issue of her claim-of-right defense. The appellant's failure to object to the giving of Instruction No. 9, without the mandated claim-of-right-defense language of MAI–CR 3d 324.02.1, however, did not waive plain error review. This is so in that it is well settled that: *"Even if no objection is made*, the failure to instruct upon a defense supported by the evidence is plain error affecting substantial rights." *State v. Westfall*, 75 S.W.3d 278, 281 (Mo. *banc* 2002) (emphasis added). In fact, "once [the defendant] injected self-defense into the case, the trial court was required to instruct on self-defense, *even in the absence of a request for such an instruction, and even if such an instruction was offered but not in proper form." Id.* at 281 n. 9 (emphasis added).

■ In *State v. Westfall*, the defendant had the "burden of injecting the issue" of self-defense in the case, just as the appellant had the "burden of injecting the issue" of the claim-of-right defense in this case. This court, relying on the law of *State v. Westfall*, held in *State v. Beck*, 167 S.W.3d 767, 777 (Mo.App.2005), that there is no waiver of plain error even where the defendant requested the instruction at trial that he challenges on appeal. In *State v. Beck*, the defendant had the "burden of injecting the issue" of self-defense in the case. The claim-of-right defense, like self-defense, is a special negative defense. *Quisenberry*, 639 S.W.2d at 583 n. 8.[4] Logically then, the rule of *Westfall* and *Beck* would apply equally to the special negative

defenses of self-defense and the claim-of-right defense. Hence, in this case, the fact that the appellant did not object to Instruction No. 9, for failure to instruct on the special negative defense on which she was relying for acquittal, a claim-of-right defense, does not mean she waived plain error review. Thus, the question becomes whether the trial court's failure to instruct on a claim-of-right defense, in Instruction No. 9, resulted in manifest injustice or a miscarriage of justice to the appellant.

■ As noted, *supra*, to demonstrate manifest injustice or a miscarriage of justice as to her claim of instructional plain error in this point, the appellant must show that the jury was so confused or misdirected by the failure of the trial court to instruct it on the issue of a claim-of-right defense that its verdict would have been different. In that regard, she contends that because the trial court failed to instruct in Instruction No. 9 on the issue of a claim-of-right defense, as mandated, the jury was misdirected as to what the State had to prove in order to convict her of stealing, mandating reversal of her conviction. Specifically, she contends that the jury was not instructed on the contested negative-defense-proof element of the State's case—that she did not have an honest belief that she had a right to take the alleged stolen items of property—and as such the jury was misdirected as to what the State had to prove to convict. We agree.

■ A "verdict-directing instruction must contain each element of the offense

---

**4.** A special negative defense is a defense: (1) upon which the defendant does not carry the burden of proof, (2) supported by enough evidence arising during the whole case to raise a reasonable doubt of defendant's guilt, and (3) which presents a positive fact or set of circumstances, as distin-

guished from a bare denial or converse, which, if found, would negate one or more essential elements of an offense, or which would, if found, constitute a legal defense. *State v. Davis*, 71 S.W.3d 659, 665 (Mo.App. 2002).

charged and must require the jury to find every fact necessary to constitute essential elements of [the] offense charged." *State v. Doolittle*, 896 S.W.2d 27, 30 (Mo. *banc* 1995). Thus, as a general rule, an instructional error that results in the State being relieved of proving a disputed element of its case is plain error, requiring reversal. *Id.; State v. White*, 92 S.W.3d 183, 192–93 (Mo.App.2002). Otherwise, in violation of due process, the State could obtain a conviction without the jury deliberating on and determining a contested proof element.

Once the issue of the claim-of-right defense is injected in the case, as here, the State has the additional burden of proving, beyond a reasonable doubt, that the appellant, in taking the items from the Camp, was not acting with an honest belief that they belonged to B. Hisek. § 556.051.2; Note on Use 5 of MAI–CR 3d 324.02.1; *State v. Davis*, 71 S.W.3d 659, 665 (Mo. App.2002). Thus, in such cases, in addition to proving the standard elements of the offense itself, the State has the burden of proving the special-negative-defense-proof element, concerning a claim-of-right defense. Logically then, the requirement of *State v. Doolittle*, that a "verdict-directing instruction must contain each element of the offense charged and must require the jury to find every fact necessary to constitute essential elements of [the] offense charged," 896 S.W.2d at 30, would apply equally to the special-negative-defense-proof element, as to a claim-of-right defense properly injected in the case.

As a general proposition:

[a]n appellate court will be more inclined to reverse in cases where the erroneous instruction 'did not merely allow a wrong word or some other ambiguity to exist, [but] excused the State from its burden of proof on [a] contested element of the crime.' Additionally, this court

has previously held that where a verdict director effectively omits an essential element of the offense, such an instruction rises to the level of plain error if the evidence in the case fails to establish the existence of the omitted element 'beyond serious dispute.'

*State v. Harney*, 51 S.W.3d 519, 533–34 (Mo.App.2001). This general proposition, as to the failure to instruct on the proof elements of the actual offense, has been applied to the failure to instruct on a special negative defense. In *State v. Westfall*, discussed, *supra*, the Supreme Court held that the failure to instruct upon self-defense was plain error affecting substantial rights, requiring reversal. 75 S.W.3d 278, 281 (Mo. *banc* 2002). Likewise, in *State v. Reynolds*, 72 S.W.3d 301, 305–06 (Mo.App. 2002), the court, quoting *State v. Morrow*, 41 S.W.3d 56, 59 (Mo.App.2001), held that: "Manifest injustice results when a defendant meets his burden of injecting the issue of self-defense into the case but the trial court does not submit an instruction on the issue to the jury regardless of whether the defendant requests the instruction." Logically, this same reasoning would apply to the special negative defense of a claim-of-right defense such that if the issue of whether the appellant had an honest belief that she had a right to help B. Hisek take the stolen items from the Camp was in serious dispute at trial, then the trial court committed reversible plain error in failing to instruct on that defense.

There is no question from the record that the issue of whether the appellant took the alleged stolen items of property with an honest belief that she had a right to do so was in dispute, requiring the trial court to instruct the jury, in the State's stealing verdict director, Instruction No. 9, on a claim-of-right defense. Instruction No. 9 reads:

As to Count II, if you find and believe from the evidence beyond a reasonable doubt:

First, that on or about February 25, 2003, in the County of Ray, State of Missouri, the defendant Mardell Lynn January took three chainsaws, a Coleman Air compressor, a Craftsman 18V cordless drill, a Makita Hypoid saw, a plunge router, a Makita Disc grinder, and a Homelite yard sweeper vacuum, property owned by Missouri United Methodist Camping and Retreat Ministry, and

Second, that defendant did so without the consent of Missouri United Methodist Camping and Retreat Ministry, and

Third, that defendant did so for the purpose of using or disposing of it in such a way that made recovery by the owner unlikely, and

Fourth, that the property so taken had a combined value of at least five hundred dollars,

then you will find the defendant guilty under Count II of stealing.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant Mardell Lynn January not guilty of that offense. The instruction, obviously, fails to instruct on the issue of a claim-of-right defense. And, there is nothing in the instruction or record to suggest that the jury, absent a written instruction on that issue, would have otherwise considered, in returning its guilty verdicts, whether the State had carried its burden of proving, beyond a reasonable doubt, that the appellant did *not* have an honest belief that she had a right to take the alleged stolen items of property, such that the State, in violation of due process, was allowed to convict the appellant of stealing, without being required to prove an essential element of that offense.

This alone is sufficient for us to find manifest injustice and a miscarriage of justice in order to reverse the appellant's conviction for stealing for instructional plain error. Accordingly, we must reverse.

In holding as we do, we are cognizant of the fact that there are numerous facts in the record that could likely persuade a jury that the appellant, in taking the items from the Camp, was not acting with an honest belief that they belonged to B. Hisek. However, that is an issue for the jury. The question here was whether we could be assured, in ensuring the appellant the requisite right to due process, that the jury was not misled or confused by the trial court's instructions, specifically Instruction No. 9, as to its sworn duty, in order to convict her as charged, with stealing, to consider and find that the State had carried its burden of proving, beyond a reasonable doubt, that in taking the stolen items from the Camp, she was not acting with an honest belief that they belonged to B. Hisek.

██ Reversal for instructional plain error requires a remand for a new trial. *White*, 92 S.W.3d at 193. And, inasmuch as the appellant's conviction for burglary in Count I was predicated on her conviction for stealing in Count II, in reversing her stealing conviction and remanding for a new trial on the stealing offense, we necessarily must reverse her conviction for burglary and remand for a new trial, *Quisenberry*, 639 S.W.2d at 582 n. 2, rendering moot the appellant's Point II, in which she attacks her burglary conviction on the same basis that she attacked her stealing conviction in Point I, such that we need not address it.

## Conclusion

The judgment of the circuit court convicting the appellant of burglary, Count I,

and stealing, Count II, is reversed, and the case remanded to the court for a new trial in accordance with this opinion.

ULRICH and BRECKENRIDGE, JJ., concur.