STATE of Missouri, Respondent,

v.

Eric BEISHLINE, Appellant.

No. WD 48559.

Missouri Court of Appeals,
Western District.

April 23, 1996.

Douglas Hoff, Asst. Public Defender, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before SPINDEN, P.J., and BERREY and LAURA DENVIR STITH, JJ.

SPINDEN, Presiding Judge.

A jury found Eric J. Beishline guilty of stealing by deceit property with a value of at least $150. The circuit court sentenced Beishline to five years in prison as a prior offender. Beishline appeals. He asserts that the circuit court erred by (1) denying his request to inquire during *voir dire* about pretrial publicity; (2) denying his motion for a second change of venue because of pre-trial publicity; (3) denying his motion to quash the prosecutor's peremptory strike of an Hispanic juror; (4) refusing his proposed instruction on a "claim of right" defense; and (5) refusing to allow him to submit the testimony of three witnesses. Beishline also complains that he was denied effective assis-

tance of counsel because his trial counsel did not submit questions for the venire panel to the circuit court regarding pre-trial publicity. We affirm.

Beishline sold insurance. On October 23, 1992, he persuaded 89-year-old Emilie Mersey of Boonville to buy nursing home insurance. Beishline filled out an application for her, but he did not put a date on it.[1] Beishline convinced Mersey to give him a check for $4250 payable to him rather than the insurance company.[2]

Beishline took the check to United Missouri Bank in Boonville to cash it. Bank personnel became suspicious. After questioning Beishline, bank personnel refused to cash the check and suggested that Beishline bring Mersey to the bank to approve the transaction. Beishline left the bank and returned a short time later with Mersey. Mersey told the bank that she wanted the check cashed. A bank teller cashed the check but deducted $2650 from the amount of the check because Beishline owed the bank money.[3]

Beishline went back to Mersey's house a week later and convinced her to give him a check for $1022 for increased nursing home benefits. Beishline did not prepare an application for Mersey to sign.[4] Beishline took the check to the same bank, and presented it for payment. The bank's drive-through manager telephoned Mersey. Mersey approved the transaction, so a bank teller cashed it.

Beishline never sent Mersey's application to an insurance company although the company for which he worked required agents to submit applications for insurance within 10 days of the applicant's signing it. The company's policy was to return applications which had been signed more than 30 days before the company received them. It required its agents to obtain a new application

with current information. The company also required that checks be made payable to it. If an agent sold policies underwritten by two different companies, the company required a separate check for its policy.

When police officers searched Beishline's apartment on January 11, 1993, they found Mersey's undated application for insurance. Mersey had not signed it.

Beishline testified that Mersey called him before Thanksgiving to ask when he was going to clean her windows and floors. Beishline said that he recognized that she was confused, and he became concerned whether she would be eligible for the nursing home benefits. Beishline said he planned to return the money to her after a Thanksgiving trip, but those plans were blocked by his arrest during his trip in Greenville, Illinois, for drug and weapons charges which resulted in his being jailed until December 10, 1992. When he returned to his home in Columbia, he learned that Cooper County authorities had issued a warrant for his arrest, so he did not have a good opportunity to return the money to her.

In his first point on appeal, Beishline argues that the circuit court abused its discretion when it refused to let him ask potential jurors during *voir dire* about pre-trial publicity of his case. He asserts that a Columbia television station portrayed him in its newscasts as a con artist who preyed on the elderly and who was potentially involved in other crimes, including several murders. Instead of letting Beishline question the panel members, the circuit court asked its own questions. Beishline argues that these questions were not sufficient to identify potential jurors who had been tainted by pre-trial publicity. Under these circumstances, we disagree.

1. Beishline claimed that he did this because he was unsure about the premium chart and whether this was the best benefit package for Mersey.

2. Beishline claimed that he asked her to do this because it was for two insurance policies: $3,900 for a nursing home policy and the remainder for Medicare supplement insurance.

3. This debt arose when the bank mistakenly allowed Beishline to cash a check on which a stop

payment order had been issued. Bank officers had discussed the debt with Beishline several times, and Beishline told them that he would be at the bank on October 23, 1992, to take care of his obligation.

4. Beishline explained to jurors that he had an application that he had filled out at home, but he did not take it to Mersey's house.

Instead of individual *voir dire*, the circuit court examined the panel collectively and asked all of the questions regarding pre-trial publicity. The court asked:

> Ladies and gentlemen of the jury panel, the court wishes to inquire of you if any of you have heard from any source or read from any source or have seen on television anything about this trial or about Mr. Beishline prior to this morning. If so, do not tell me what you may have seen or heard, but would you please raise your hand and give us your name?

After 47 of the 66 venire persons answered affirmatively, the court asked them:

> To those of you who just responded, will you tell me please if based upon what you may have read, heard or seen you have formed an opinion before the commencement of this trial about the guilt or innocence of this defendant? And again, do not tell me what your opinion might or might not be. But if you've formed an opinion will you please raise your hand and give us your name?

Nineteen panel members responded affirmatively. The court then asked:

> To those of you who responded to the last question if you've formed an opinion, would you be able to lay aside any impression or opinion that you may have formed about this proceeding and render a verdict based upon the evidence presented in court? If there is anyone who could not, would you please raise your hand and give us your name?

Eight panel members raised their hands. The circuit court removed all of these for cause.

Beishline argues that this examination was "cursory and superficial" and inadequate to enable him to intelligently exercise his peremptory challenges or his challenges for cause. The circuit court, however, told the parties a week or more before trial that it intended to conduct the *voir dire* on the issue of pre-trial publicity. The court told Beishline and the prosecutor to submit written questions they wanted asked about pre-trial

publicity. Beishline did not submit any questions before *voir dire*.[5]

█ The circuit court has much discretion in directing the nature and scope of *voir dire*. *State v. Skelton*, 851 S.W.2d 33, 35 (Mo.App.1993). We do not discern a basis for concluding that the circuit court abused its discretion. Individual *voir dire* is normally not required, *State v. Chambers*, 891 S.W.2d 93, 102 (Mo. banc 1994), and the parties have no right to *voir dire* the panel members separately. *State v. Gray*, 731 S.W.2d 275, 281 (Mo.App.1987). The questions asked by the circuit court identified which of the panelist had heard the newscasts and which of those had formed opinions about Beishline's guilt from the stories. Beishline's complaints about the circuit court's questions come too late. He had an opportunity to help craft the questions but waived it by waiting until after the circuit court's deadline had expired to submit written questions.

█ Beishline next complains of the circuit court's denial of his Rule 29.15 motion. He contends that his attorney's not submitting written, *voir dire* questions about pre-trial publicity demonstrated incompetence. We disagree. To prevail on a claim of ineffective assistance of counsel, Beishline's burden was to demonstrate that his attorney's overall performance was deficient and that he was prejudiced. *State v. Suarez*, 867 S.W.2d 583, 587 (Mo.App.1993). Beishline singles out a single failure and argues that it establishes that his attorney was incompetent. He makes no effort to show that his attorney's overall performance fell short of established acceptable levels of performance. Even if he were correct in asserting that a reasonably competent attorney would have submitted written questions, he would not be entitled to relief because we find no indication of overall incompetence. *Jones v. State*, 784 S.W.2d 789, 793 (Mo. banc), *cert. denied*, 498 U.S. 881, 111 S.Ct. 215, 112 L.Ed.2d 175 (1990). Competent performance overall—not errorless performance—was required of Beishline's attorney. We have reviewed the entire record. We fail to find any merit to

---

**5.** After the circuit court denied Beishline's request to individually *voir dire* the panel members, Beishline asked to submit written questions. The circuit court refused the request.

Beishline's contention that his attorney was ineffective.

Next, Beishline contends that the circuit court abused its discretion in overruling his motion for a second change of venue. He asserts that the media coverage pending against him was so pervasive that fundamental fairness required that the case be moved from Pettis County. We disagree.

Whether to grant or deny a change of venue because of pre-trial publicity is a matter left to the circuit court's sound discretion. *State v. Feltrop*, 803 S.W.2d 1, 6 (Mo. banc), *cert. denied*, 501 U.S. 1262, 111 S.Ct. 2918, 115 L.Ed.2d 1081 (1991). The relevant question is not whether or to what extent the community remembers the case, but whether the prospective jurors had such fixed opinions that they could not judge impartially the guilt of the defendant. *Id.* The circuit court is in a better position than us "to assess the effect of publicity on the minds of the community and to determine whether the residents of the county are so prejudiced against a defendant that a fair trial would not be possible." *Id.*

In this case, 47 of the 66 panel members had heard about Beishline in news stories. Only 19 of those had formed an opinion of Beishline's guilt, and only eight indicated that they could not set their opinions aside. The record does not support a conclusion that the circuit court abused its discretion in denying a second change of venue.

Beishline also contends that the circuit court abused its discretion in overruling his challenge to the state's use of a peremptory challenge to remove a juror who Beishline claimed was Hispanic. We disagree. Beishline failed to meet his burden of proving that the state's proffered reason for striking the juror was a pretext for racial discrimination.

When a prosecutor articulates a race-neutral reason for a strike, the burden shifts to the defendant to show that the state's explanation was merely pretextual and that the strike was racially motivated. *State v. Elder*, 901 S.W.2d 87, 90 (Mo.App. 1995). If the defendant fails to present evidence in support of a contention that the state's explanation for a peremptory strike is

a pretext and relies on general or conclusory allegations about the state's reasoning, the circuit court should overrule the objection. *State v. Mack*, 903 S.W.2d 623, 629 (Mo.App. 1995). Beishline did not challenge the state's explanation, so he abandoned the issue.

Beishline also complains of the circuit court's rejecting his proposed instruction on a "claim of right" defense. The point has no merit.

The state had charged Beishline with stealing by deceit property having a value of at least $150 in violation of § 570.030, RSMo 1994. Pursuant to § 570.070(1), RSMo 1994, a person is not guilty of an offense under § 570.030 if he "[a]cted in the honest belief that he had the right to do so[.]" The defendant has the burden of injecting the issue of claim of right and establishing a basis for the claim with substantial and competent evidence. *State v. Kramer*, 809 S.W.2d 50, 52 (Mo.App.1991).

Beishline failed to establish a sufficient basis for injecting the defense. His defense was not that he had, or reasonably believed that he had, a legal right to the proceeds of the $4250 check written by Mersey. Rather, he claimed that he did not intend to deprive Mersey of the money permanently and would have returned the money to her had he had the ability or opportunity to do so. The circuit court properly refused the instruction.

In his final point, Beishline contends that the circuit court abused its discretion in refusing to allow him to present the testimony of three witnesses. The circuit court properly rejected their testimony.

Beishline wanted to present the testimony of Curtis Matson that Beishline had said before Thanksgiving in 1992 that he did not intend to procure a policy for Mersey because he thought she was mentally unstable and not qualified to be insured. Beishline contends that this was relevant to his defense that he did not send in Mersey's application for insurance because he thought she did not qualify for the policy. The circuit court correctly rejected it. A defendant cannot create exculpatory evidence by introduc-

ing self-serving, hearsay statements which are not part of the offense's *res gestae*. *State v. Sweet*, 796 S.W.2d 607, 614 (Mo. banc 1990), *cert. denied*, 499 U.S. 932, 111 S.Ct. 1339, 113 L.Ed.2d 270 (1991). Beishline's declaration that he did not intend to send in Mersey's policy premium or application because of her supposed mental condition, made several weeks after he had already converted part of the proceeds of her check for his own use, was a self-serving statement.

Beishline wanted Maureen Bolin to testify that three months before Beishline's dealings with Mersey, she gave Beishline a check payable to him and that Beishline did not submit the application to the insurance company, but he returned her money. Beishline contends that this would have established that he did not intend to deprive Mersey of her money permanently. Such testimony does not establish that he did not intend to steal from Mersey. Moreover, Beishline had already converted Mersey's money to his own use by using it to repay a personal obligation.

Beishline also wanted James Fiumara, Beishline's supervisor at American Travelers Insurance Company, to testify that the policy for which Mersey applied excluded a person with brain disease and mental disorders. He contends that this would have shown that Beishline knew that he could not follow through on the application because Mersey's mental condition disqualified her for insurance. Beishline recognizes that he did not raise this in his motion for new trial; hence, he seeks review as plain error. "[U]nless a claim of plain error facially establishes substantial grounds for believing that 'manifest injustice or miscarriage of justice has resulted,' this Court will decline to exercise its discretion to review for plain error under Rule 30.20." *State v. Brown*, 902 S.W.2d 278, 284 (Mo. banc)(quoting Rule 30.20), *cert. denied*, — U.S. —, 116 S.Ct. 679, 133 L.Ed.2d 527 (1995). We decline to review for plain error because the exclusion of Fuimara's testimony does not facially establish substantial grounds for believing that "manifest injustice or miscarriage of justice has resulted."

We, therefore, affirm the judgment of the circuit court.

LAURA DENVIR STITH, J., concurs.[6]

---

6. Although Judge Berrey participated in oral arguments and concurred in the result, he did not review this opinion before hand down. He was not available because of illness.