

# Missouri Court of Appeals

### Southern District

### Division Two

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | |
| | ) | |
| v. | ) | No. SD33590 |
| | ) | |
| MARION WILLIAM KASPARIE, JR., | ) | **Filed: Nov. 10, 2015** |
| | ) | |
| Defendant-Appellant. | ) | |

APPEAL FROM THE CIRCUIT COURT OF POLK COUNTY

Honorable Lisa Carter Henderson, Associate Circuit Judge

## **AFFIRMED**

A jury found Marion William Kasparie, Jr. ("Defendant") guilty of domestic assault in the second degree for acts committed on April 29, 2013 against a household member ("Victim").[1] Defendant's first two points claim the trial court abused its discretion by: (1) "overruling [Defendant]'s request for a mistrial during the prosecutor's closing argument" when the prosecutor made "a clear reference to the fact that [Defendant] did not testify"; and (2) "sustaining the [S]tate's hearsay objection when" defense counsel asked an officer whether Defendant told him that Victim had attacked

---

[1] *See* section 565.073.1(1) concerning "Domestic assault, second degree[.]" We are protecting Victim's identity as required by section 566.226.1. Defendant waived jury sentencing, the trial court declared a seven-year sentence, then suspended its execution and placed Defendant on a five-year term of probation. All statutory references are to RSMo Cum. Supp. 2013. All rule references are to Missouri Court Rules (2015).

Defendant because the prosecutor "had already opened the door" by inquiring "about another part of that same conversation[,]" thereby triggering "the rule of completeness[.]"

Defendant's third point contends the trial court committed plain error in violation of Defendant's due process rights by "not *sua sponte* instructing the jury on self-defense" even though Defendant did not request such an instruction because "the visible injuries to [Defendant] along with [Victim]'s testimony provided substantial evidence to support a claim of self-defense[.]"

Finding no merit in any of these claims, we affirm.

### The Evidence[2]

On the night of April 28, 2013, Victim went to a restaurant to eat dinner with a female friend. The two women, "decid[ing] that the evening was young[,]" went to celebrate the friend's birthday by having some drinks with some male friends at the American Legion hall. Victim called Defendant and invited him to join them, and he eventually did. When Victim wanted to leave, Defendant did not want to go, so Victim told him that she was leaving with her female friend. Defendant then grabbed Victim's arm, twisted it, and "said, 'You would rather go with that bitch instead of stay here with me.'" Two or three men, observing this interaction, got up from their seats at the bar. When this occurred, Victim "somehow got loose and [she] left."

As Victim went to her female friend's house, Defendant was constantly calling Victim's phone. Victim did not answer the calls, and Defendant "kept leaving messages,

---

[2] Defendant does not challenge the sufficiency of the evidence to support his conviction, but "we view the evidence in a light most favorable to the defendant" when considering if there was evidence to support the submission of a self-defense instruction. **State v. White**, 222 S.W.3d 297, 300 (Mo. App. W.D. 2007). As a result, we provide a summary of all evidence relevant to the resolution of Defendant's points, including his assertion that the trial court should have *sua sponte* submitted self-defense to the jury. Additional evidence and procedural background will be included in our analysis of Defendant's points.

2

just ranting and raving." Defendant finally left a message that Victim considered "calm enough," and Victim had her friend drive her home. When Victim arrived, Defendant and a male friend of his were there.

After Victim went to bed, Defendant came into the bedroom. Victim testified that Defendant "picked up the mattress and threw [her] off of the mattress and told [her that she] wasn't sleeping in his bed." According to Victim, she and Defendant "started fighting, arguing back and forth, and [Defendant] hit [her], and then the next thing [Victim knew,] the police [were] there."

Bolivar Police Officer Scott Hendrickson responded to the residence around 11:30 p.m. At that time, he did not observe any injuries to either Defendant or Victim. Officer Hendrickson asked Defendant about the "signs of disturbance" in the master bedroom, and Defendant "said that he did flip the bed off of the box spring. He indicated that no one was on it at the time." No one was arrested, but "two minutes later after clearing the scene[,]" officers were again dispatched to the residence.

Victim testified that there had been "another altercation[.]" This time, Officer Hendrickson observed that Defendant had "[a] small cut on [his] hand[,]" and Victim had no visible injuries. The officer did not recall seeing Defendant's friend at the residence on that second visit. Officer Hendrickson talked with "[b]oth parties" about the advisability of one of them leaving the residence, but neither agreed to do so. Victim did agree to move into "a different bedroom[.]"

After the police left, Victim sat on the living room couch, "watching TV," and Defendant came in and out of his bedroom, "just ranting and raving[.]" Victim recalled that Defendant then came out and "got right in [her] face." He grabbed her legs, and they

3

began "wrestling and . . . fighting." Each hit the other. Defendant "said, 'You're not worth it, bitch,' and walked away."

Victim remained on the couch, and Defendant returned. This time he grabbed her legs and pulled her so that she was "fully on the couch." Victim testified that they "were fighting each other." Victim said Defendant did not have on any pants or underwear, and during the "fighting, [Victim] reached over and [she] pulled his scrotum . . . as hard as [she] could to hurt him[.]" Victim recalled that "somehow or another [she] just forced him off of [her] and literally threw him over the coffee table." Victim got to the front door, "getting ready to open" it, but Defendant "slammed it shut."

According to Victim, "there was a lot of arguing and mouthing back and forth and fighting back and forth. He hit [her], [she] hit him." Defendant "head butted [her] several times, and [her] head went back into the bolt lock . . . on the door." Victim went back to the couch, and Defendant tried to get on top of her. Both wound up on the floor. Victim "doubled up [her] fist and hit [Defendant] in the left side of his head as hard as [she] possible could[,]" but that did not "make him stop[.]" "[A]t the very last [Defendant] grabbed both [her] breasts and he pinched them as hard as he could, and he got up and said, 'You're not worth it anyway, bitch.'" Victim "ran out the front door and" fled in her vehicle to a parking lot, where she stopped and "called the police."

Officer Hendrickson was dispatched to the parking lot around 3:00 a.m., and he saw that Victim had been injured. Victim identified a photograph admitted into evidence as depicting "cuts" she had at her "right eye and [on] the bridge of [her] nose." Officer Hendrickson confirmed that, other than the fact that the blood appeared to be dry in the exhibit, it otherwise depicted how Victim looked when he saw her at the parking lot.

4

Other photographs admitted into evidence depicted Victim's black eye and bruised wrist, breasts, and thighs.

After his meeting with Victim in the parking lot, Officer Hendrickson "immediately responded to the residence[.]" Defendant met the officers at the door, and he was "[v]ery calm[,]" but he also had "fresh injuries" in the form of scratches on his cheek and arm, "a cut to his ear[,]" and "a scrape or a contusion [on] his . . . head." Defendant was fully dressed in "a button-up shirt and jeans and a hat." A photograph depicting Defendant as he appeared at around 3:30 a.m. (wearing his hat and displaying a scratch on his cheek) was admitted into evidence as one of the State's exhibits. Additional photographs of Defendant, depicting scratches on his face and arm, a cut on his ear, and a contusion on his head, were also admitted on Defendant's behalf.

This appeal timely followed the trial court's acceptance of the jury's guilty verdict, the denial of Defendant's motion for new trial (preserving his claims of error regarding points I and II), and the imposition of Defendant's sentence as earlier described.

**Analysis**

*Point I – Statement by Prosecutor during Closing Argument*

Defendant's first point claims the trial court erred in failing to grant a mistrial in response to certain comments the prosecutor made during his rebuttal closing argument. The comments were made in response to defense counsel's claim that the State's evidence was lacking. In attempting to rebut that argument, the prosecutor started to recount certain evidence adduced by the State, then stated, "Where's the evidence? Where's the – from the Defense, where's the evidence?" Defense counsel promptly objected, at which point the prosecutor stated, "There is none."

5

Counsel then approached the bench where, in a brief exchange, the trial court cautioned the prosecutor that Defendant did not have to produce any evidence. The following colloquy then occurred:

THE COURT: But the objection to that argument will be sustained. Do you wish cautionary instruction to the --

[Defense Counsel]: We would like to ask for a mistrial.

THE COURT: -- jury? Okay. That is denied.

[Defense Counsel]: We would ask for a cautionary instruction.

THE COURT: Okay. And how would you -- how would you propose?

[Defense Counsel]: I think a simple disregard.

THE COURT: I suggest that you need -- that the jury is to disregard any implication that the Defendant has to prove any element.

[Defense Counsel]: And then he can restart his (indiscernible).

THE COURT: Or prove his innocence.

[Defense Counsel]: That would be fine.

THE COURT: All right.

(Proceedings returned to open court.)

THE COURT: Ladies and gentlemen of the jury, the Court wants to inform you that you need to disregard any implication by the Prosecuting Attorney that the Defendant has any burden of producing any evidence of him not being guilty. I think you understand that that burden of proof that he is guilty is on the State. So you will disregard any implication contrary to that, all right? Thank you.

Defense counsel made no objection to the form of the admonition.

6

Defendant now claims that the trial court's instruction to disregard "was not enough" in that the prosecutor's comment "was a clear reference to the fact that [Defendant] did not testify on his own behalf" and was so egregious as to require a mistrial. We disagree.

Comments on the fact that a defendant has exercised his right not to testify are not permitted. *State v. Neff*, 978 S.W.2d 341, 344 (Mo. banc 1998); *see also* section 546.270; Rule 27.05(a). However, even if we were to assume that the prosecutor's statement here could be construed as a reference to Defendant not testifying,[3] the general rule under such circumstances is that the sustaining of an objection to such a comment -- coupled with a prompt admonition to the jury to disregard it -- is sufficient to cure any resulting harm. *Neff*, 978 S.W.2d at 346. That is exactly what occurred here, and the trial court is in a far superior position to judge the efficacy of such a response. As a result, we defer to its discretion in these matters, and that discretion "is deemed abused only when a trial court's ruling is clearly against the logic of the circumstances then before it and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Id.* at 345, 347.

The challenged remark was brief and isolated, defense counsel's prompt objection was sustained, and the trial court admonished the jury to disregard any inference that Defendant had any burden to produce evidence in his defense.[4] The trial court did not

---

[3] In this case, the parties dispute whether the prosecutor's challenged statement was an improper reference to Defendant's decision not to testify or a permissible comment on Defendant's failure to rebut the State's case — a distinction with legal significance. *Cf. State v. Phillips*, 940 S.W.2d 512, 519 (Mo. banc 1997) ("The State may refer to a defendant's failure to offer evidence, so long as there is no reference to the defendant's failure to testify." (internal citation omitted)).

[4] *Cf. State v. Wheeler*, 219 S.W.3d 811, 817 (Mo. App. S.D. 2007) (finding that "inadvertent, brief, and isolated comment during closing argument coupled with the jury instruction was sufficient to cure any prosecutorial error and any prejudice that may have resulted"); *State v. Tolliver*, 101 S.W.3d 313, 317 (Mo. App. E.D. 2003) (finding no abuse of discretion in denying request for mistrial where improper remark,

abuse its discretion in denying the request for a mistrial under these circumstances. Point I is denied.

*Point II – Defendant's Hearsay Statement*

Defendant's next point claims that the trial court's sustaining of a hearsay objection lodged by the State during defense counsel's cross-examination of Officer Hendrickson prevented Defendant from presenting "a defense" and violated the rule of completeness.

On direct examination, Officer Hendrickson addressed Defendant's arrest, which occurred during the officer's third visit to the residence. The prosecutor established that, during the course of that arrest, Officer Hendrickson "read [Defendant] his *Miranda* rights[,]"[5] and Defendant "said he didn't understand his rights." When the officer read them again, Defendant gave the same reply.

In cross-examining Officer Hendrickson, defense counsel asked, "And when you came back that third time, [Defendant] told you that [Victim] had attacked him?" The prosecutor promptly objected on the ground that the alleged statement was self-serving hearsay. In response, defense counsel argued that because the prosecutor had elicited from Officer Hendrickson Defendant's responses to the officer's *Miranda* warnings, the challenged statement was also admissible under the "theory of completeness." The trial court sustained the prosecutor's hearsay objection, and it did not err in doing so.

"As a general rule, '[a] defendant cannot create exculpatory evidence by introducing self-serving, hearsay statements[.]'" ***State v. Marshall***, 410 S.W.3d 663, 672

---

made during closing argument rebuttal, "was isolated, and even assuming that it was made intentionally just before the jury retired and at a time when [the defendant] could not respond to it, no other comment on [the defendants]'s failure to testify was made after the trial court's admonition").

[5] *See **Miranda v. Arizona**,* 384 U.S. 436 (1966).

8

(Mo. App. S.D. 2013) (quoting *State v. Beishline*, 920 S.W.2d 622, 626-27 (Mo. App. W.D. 1996)). "The rule of completeness provides that 'where either party introduces part of an act, occurrence, or transaction, the opposing party is entitled to introduce or inquire into other parts of the whole[.]'" *State v. Jackson*, 313 S.W.3d 206, 211 (Mo. App. E.D. 2010) (quoting *State ex rel. Kemper v. Vincent*, 191 S.W.3d 45, 50 (Mo. banc 2006)). Defendant claims the rule is applicable here because the statement sought to be admitted was "part of th[e] same conversation" between Defendant and Officer Hendrickson.

For the rule of completeness to be applicable, the statement Defendant sought to introduce—that Victim had attacked him—"must tend to explain, contradict, or qualify the portion of the conversation testified to on direct examination." *State v. Stevens*, 757 S.W.2d 229, 234 (Mo. App. E.D. 1988). We fail to see (and Defendant makes no attempt to demonstrate) how the alleged statement would have provided any additional context to his statements about not understanding Officer Hendrickson's *Miranda* warnings. Without such a showing, the rule of completeness is not applicable. Point II is denied.

*Point III – Self-Defense Instruction*

Defendant concedes that he did not request a self-defense instruction at trial, and he did not raise a claim of instructional error in his motion for new trial. As a result, he seeks plain error review of his claim that the trial court erred by failing, *sua sponte*, to instruct the jury on self-defense.

We begin with a reminder that a trial court must always be on the lookout for evidence raising the issue of self-defense. *State v. Hiltibidal*, 292 S.W.3d 488, 494 (Mo. App. W.D. 2009). "If the defendant injects self-defense into the case and there is substantial evidence to support a self-defense instruction, it is reversible error for the trial

9

court to fail to submit a self-defense instruction to the jury under plain error review." *State v. Bolden*, 371 S.W.3d 802, 805 (Mo. banc 2012). "'Substantial evidence' is evidence putting a matter in issue." *State v. Avery*, 120 S.W.3d 196, 200 (Mo. banc 2003). "Whether the evidence raises the issue of self-defense is a question of law." *State v. Nunn*, 697 S.W.2d 244, 246 (Mo. App. E.D. 1985).

Thus, even if a defendant does not request "the instruction at trial, if 'substantial evidence' is presented to support the giving of an instruction on self-defense, it is error to fail to give the instruction." *Hiltibidal*, 292 S.W.3d at 493. Further, "[t]he trial court must give the instruction regardless of whether the evidence supporting the justification defense is inconsistent with the defendant's testimony or theory of the case[,]" *State v. White*, 222 S.W.3d 297, 300 (Mo. App. W.D. 2007), because "any conflict in the evidence is to be resolved by a jury properly instructed on the issues." *Id. See also Avery*, 120 S.W.3d at 203 (even though the defendant testified at trial that the killing was an accident, it was error to refuse a self-defense instruction when the State's evidence of defendant's prior inconsistent statements supported such a defense).

Defendant argues that the evidence relevant to self-defense in the instant case consisted of: (1) Officer Hendrickson's testimony that on his third encounter with Defendant, the officer noticed Defendant's "'fresh injuries'" consisting of a scratched cheek and arm, cut ear, and head contusion; (2) the photographs depicting these injuries; and (3) Victim's testimony, as characterized by Defendant, that "in the course of defending herself, she 'hit him in the left side of the head as hard as (she) possibly could,' pulled his scrotum, and threw him over a coffee table."

The State argues that self-defense was not injected in this case because "all of the evidence admitted established that Defendant was the initial aggressor and therefore was not entitled to invoke self-defense." The State relies on the codification of self-defense in section 563.031.1 that permits a person ("the actor") to use "physical force upon another person when and to the extent he or she reasonably believes such force to be necessary to defend himself or herself . . . from what he or she reasonably believes to be the use or imminent use of unlawful force by such other person" unless "[t]he actor was the initial aggressor[.]" Section 563.031.1(1). Unless he withdraws from the exchange, "[a]n aggressor cannot claim self-defense and does not have the benefit of a self-defense jury instruction." *State v. Gheen*, 41 S.W.3d 598, 606 (Mo. App. W.D. 2001).[6]

Defendant asserts that "[t]here can be no dispute that [Defendant] and [Victim] both caused physical injury to one another" and that this, coupled with Victim's testimony that she hit Defendant "in the course of defending herself," was enough to require a self-defense instruction. Defendant provides no authority for his claim that injuries to both parties and Victim's testimony that *she* acted in self-defense constitutes evidence that Defendant acted in self-defense and was not the initial aggressor.

What Defendant argues is: "[t]he jury was free to disbelieve [Victim]'s testimony about [Defendant] being the initial aggressor and instead believe that [Defendant] acted in lawful self-defense. In fact, the jury did not find [Victim] to be a credible witness as shown by their not guilty verdicts on [two other counts]."[7] This argument ignores the

---

[6] The statute provides that an actor who was the initial aggressor may subsequently be justified in defending himself in certain situations, such as when his withdrawal is "effectively communicated" to the other person and the other person "persists" with actual or threatened "unlawful force"; there are specific circumstances involving a law enforcement officer; or "other provision[s] of law" apply. Section 563.031.1(1)(a), (b) and (c).

[7] As Defendant points out in his statement of facts, he was found "not guilty of the attempted forcible rape and forcible sodomy counts."

11

fact that the other counts on which Defendant was acquitted charged different offenses. Further, "[a]s the trier of fact, the jury is the sole arbiter of witness credibility, and it is free to believe or disbelieve all, part, or none of any witness's testimony." **State v. Cook**, 339 S.W.3d 523, 528 (Mo. App. E.D. 2011).

Finally, as earlier noted, self-defense must be injected into the case by the defendant before the State is required to disprove it beyond a reasonable doubt and the jury is instructed on it. *See* section 563.031.5; *see also* **State v. Henderson**, 311 S.W.3d 411, 414 (Mo. App. W.D. 2010). This requirement does not mean that the defendant himself must be the source of the self-defense evidence at trial; such evidence may come from the State, and evidence injecting the issue may even be contradictory to the defendant's own testimony or theory of defense. *See Avery*, 120 S.W.3d at 200; **White**, 222 S.W.3d at 300.

Defendant replies that the jury "could have believed that [Victim] was actually the initial attacker" and this "would perfectly illustrate a view of the evidence in the light most favorable to [Defendant.]" This argument misapprehends viewing the evidence in the light most favorable to the giving of the instruction. Before a self-defense instruction is necessary, there must be *evidence* from which a reasonable inference could be drawn that the defendant was not the initial aggressor (or had thereafter withdrawn in such a manner as to qualify for the defense) and that he or she acted in self-defense -- even if such evidence could have been disbelieved or was inconsistent with other evidence. The fact-finder's prerogative to "[d]isbeliev[e] all consistent evidence presented at trial is not the same as having a basis in the evidence to support an instruction." **State v. Pierce**, 433 S.W.3d 424, 448 (Mo. banc 2014) (Draper, J., dissenting) (addressing the requirement to

instruct the jury on all "nested" lesser-included offenses).  The jury's ability to disbelieve Victim's testimony that Defendant was the initial aggressor does not constitute affirmative evidence that Defendant was not the initial aggressor.

Point III is also denied, and the judgment of conviction and sentence is affirmed.

DON E. BURRELL, P.J. - OPINION AUTHOR

GARY W. LYNCH, J. - CONCURS

WILLIAM W. FRANCIS, JR., J. - CONCURS